763 F.2d 757
 37 Fair Empl.Prac.Cas. 1445,
37 Empl. Prac. Dec. P 35,268, 53 USLW 2602
 Artell M. HENRY (81-1767), Plaintiff-Appellant,
v.
CITY OF DETROIT MANPOWER DEPARTMENT, Defendant-Appellee.
Douglas L. GORDON (81-5827), Plaintiff-Appellant,
v.
George WILSON, Al Parke, Dr. Hodge, Defendants-Appellees.
Norman E. COX (81-5878), Plaintiff-Appellant,
v.
UNION CARBIDE CORPORATION, Defendant-Appellee.
Ronny Lee PARRISH (82-5009), Plaintiff-Appellant,
v.
John O. MARSH, Jr., Secretary of the Army, Defendant-Appellee.
 Nos. 81-1767, 81-5827, 81-5878, 82-5009.
 United States Court of Appeals,
Sixth Circuit.
 Argued Jan. 14, 1985.
Decided May 22, 1985.
 
 Artell M. Henry, pro se.
 John Gleeson, argued, Cravath, Swaine & Moore, New York City, for Henry, Gordon, Cox and Parrish.
 George Matish, Kenneth G. King, Frank W. Jackson, Catherine C. McLaughlin, Sharon D. Blackmon, argued, Detroit, Mich., for City of Detroit Manpower Dept.
 Douglas L. Gordon, pro se.
 Barbara W. Jones, Department of Corrections, Linda G. Cooper, argued, Frankfort, Ky., for Wilson, Parke and Dr. Hodge.
 Norman E. Cox, pro se.
 E.H. Rayson, argued, Kramer, Johnson, Rayson, Knoxville, Tenn., G. Wilson Horde, Union Carbide Corp., Oak Ridge, Tenn., for Union Carbide Corp.
 Ronny Lee Parrish, pro se.
 Alexander T. Taft, Jr., U.S. Atty., Louisville, Ky., Peter Loewenberg, Chief, Civilian Personnel Litigation, Office of the Judge Advocate General, Department of the Army, Washington, D.C., for Marsh.
 Before LIVELY, Chief Judge, EDWARDS,* ENGEL, KEITH, MERRITT, KENNEDY, MARTIN, JONES, CONTIE, KRUPANSKY, WELLFORD and MILBURN, Circuit Judges, and BROWN, Senior Circuit Judge.
 BAILEY BROWN, Senior Circuit Judge.
 The court having voted to consider and having considered this cause en banc, the prior opinion and decision of this court reported at 739 F.2d 1109 (6th Cir.1984) is vacated.
 
 
 1
 These four appeals present a common threshold issue, never before decided by this court, whether the orders of the district courts from which the appeals were taken were "final decisions" within the meaning of 28 U.S.C. Sec. 1291 and, therefore, are appealable as a matter of right.[1] These pretrial orders denied plaintiffs' motions for appointment of counsel in three actions brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq.[2] and in one action brought under 42 U.S.C. Sec. 1983.[3]
 
 
 2
 We determine that these orders denying the motions for appointment of counsel are not, prior to final disposition of the case in the district court, "final decisions" under section 1291. Therefore, we dismiss these appeals.[4]
 
 
 3
 In Henry v. City of Detroit Manpower Department, after filing a charge with the Equal Employment Opportunity Commission (EEOC) complaining that he had been discriminated against in his employment because of his Jamaican origin and after receiving a right-to-sue letter, Henry filed a complaint under Title VII in the district court for the Eastern District of Michigan. He further sought appointment of counsel, which was denied, and Henry then brought this appeal.
 
 
 4
 In Cox v. Union Carbide Corp., after filing charges with the EEOC alleging that he had suffered discrimination in his employment because of his race and after receiving his right-to-sue letter, Cox filed a complaint pursuant to Title VII in the district court for the Eastern District of Tennessee and sought appointment of counsel. The motion for appointment of counsel was denied, and Cox then brought this appeal.
 
 
 5
 In Parrish v. Marsh, Parrish, a civilian employee of the Army, brought a Title VII action in the district court for the Western District of Kentucky, alleging that he had been discriminated against in his employment because of his race and that he had satisfied all of the requirements for bringing an action pursuant to 42 U.S.C. Sec. 2000(e)-16. Parrish sought appointment of counsel, the district court denied the application, and Parrish brought this appeal.
 
 
 6
 In Gordon v. Wilson, Gordon, an inmate in a Kentucky penal institution, brought an action for damages in the district court for the Western District of Kentucky under 42 U.S.C. Sec. 1983 against the warden and others. He alleged denial of a constitutional right to adequate medical treatment. Upon being denied his application for appointment of counsel, he brought this appeal.
 
 
 7
 Preliminarily, we set out the positions that are common to the appellants[5] and appellees. First, the issue as to the appealability of these orders denying appointment of counsel is the same whether appointment was sought pursuant to 42 U.S.C. Sec. 2000e-5(f)(1)(B) or pursuant to 28 U.S.C. Sec. 1915(d).[6] Second, the district courts, in considering an application for appointment of counsel, should at least consider plaintiff's financial resources, the efforts of plaintiff to obtain counsel, and whether plaintiff's claim appears to have any merit. Third, upon a review of a district court's denial of a motion for appointment of counsel, the standard to be applied is whether the trial court abused its discretion. We agree with these positions.
 
 
 8
 In contending that orders denying motions for appointment of counsel are "final decisions" under section 1291, appellants recognize that: "[a] 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). Appellants, however, contend that the orders involved here fit into the "collateral order" exception to the usual finality requirement as this exception was recognized by Cohen v. Beneficial Industrial Loan Corporation, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). In Cohen, the question was whether a decision denying a motion to require a plaintiff to post bond in a stockholder's derivative action was a final decision. The Court stated:
 
 
 9
 This decision appears to fall in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated. The Court has long given this provision of the statute this practical rather than a technical construction.
 
 
 10
 Id. at 546, 69 S.Ct. at 1225.
 
 
 11
 In Coopers & Lybrand v. Livesay, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978), the Supreme Court was more specific in setting out the requirements of the "collateral order" exception recognized in Cohen. In holding that an order denying certification of a class under Fed.R.Civ.P. 23, is not a final decision under section 1291, the Court stated:
 
 
 12
 To come within the "small class" of decisions excepted from the final-judgment rule by Cohen, the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment.
 
 
 13
 Id. at 468, 98 S.Ct. at 2458 (footnote and citations omitted).
 
 
 14
 In Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981), the Court unanimously held that an order denying a motion to disqualify counsel of the opposing party in a civil case was not a final decision within the meaning of section 1291. In so doing, the Court explained the reasons for ordinarily requiring a final disposition of the case before appeal:
 
 
 15
 This rule, that a party must ordinarily raise all claims of error in a single appeal following final judgment on the merits, serves a number of important purposes. It emphasizes the deference that appellate courts owe to the trial judge as the individual initially called upon to decide the many questions of law and fact that occur in the course of a trial. Permitting piecemeal appeals would undermine the independence of the district judge, as well as the special role that individual plays in our judicial system. In addition, the rule is in accordance with the sensible policy of "avoid[ing] the obstruction to just claims that would come from permitting the harrassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment."
 
 
 16
 Id. at 374, 101 S.Ct. at 673 (Marshall, J.) (citations omitted). The Court, applying the formulation as expressed in Coopers & Lybrand for determining whether the order was a "collateral order" for purposes of appeal, concluded that it was not collateral and ruled that the order was effectively reviewable on appeal.
 
 
 17
 Thus Cohen, Coopers & Lybrand and Firestone hold that an order is not a "collateral order" that satisfies the "final decision" requirement of section 1291 unless: (a) it conclusively determines the disputed question; (b) it resolves an important question completely separate from the merits of the action; and (c) it cannot effectively be reviewed on appeal from a final judgment.
 
 
 18
 The most recent decision of the Supreme Court on the issue of the appealability of interlocutory orders is Flanagan v. United States, 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984). In Flanagan, the question was whether an order disqualifying defendants' counsel in a criminal case was appealable under section 1291, and the Court unanimously held that it was not. The Court did not decide in Flanagan whether an erroneous order disqualifying counsel should, on appeal, be presumed prejudicial. The Court then reasoned that if an erroneous order disqualifying counsel is presumed prejudicial, it may be effectively reviewed; if, on the other hand, an erroneous order is not presumed prejudicial, then review of the disqualifying order cannot be done without consideration of the merits of the case. Thus, the Court reached the conclusion that the order disqualifying defendants' counsel was not an immediately appealable collateral order because the order failed to satisfy either the requirement that the issue on appeal be completely separate from the merits or the requirement that the order not be susceptible to effective review.
 
 
 19
 We will not lengthen this opinion by quoting in more detail the philosophical and practical reasons set out in Coopers & Lybrand, Firestone and Flanagan for giving a narrow application to Cohen's collateral order exception to the "final decision" requirement to section 1291. These are generally familiar and need not be repeated. Instead, we will proceed to apply the three tests, established by these decisions, that must be satisfied before these orders denying appointment of counsel can be held immediately appealable.
 
 I.
 
 20
 The first requirement of immediate appealability is that the order denying appointment conclusively determine the disputed question. Appellants argue that orders are "final," and therefore conclusively determine a matter, if further action is not contemplated, and the fact that the district judge has the power to change the order does not prevent it from being final. Supp. Brief for Appellants at 13 (citing 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 3911 (1976)). They further argue that orders are "final" unless they are made tentative by statute or rule or unless the orders are by their terms made tentative. Thus, as is the case here, in the absence of a statute, rule or express reservation making the order tentative, appellants would have us presume, for appealability purposes, that further action was not contemplated and that the order was final. We agree that, if further action by the district court is not contemplated, then for present purposes the order may be considered final. We believe, however, that orders denying appointment of counsel should be presumed tentative because these motions are sometimes made before filing of a complaint, see, e.g., Harris v. Walgreen's Distribution Center, 456 F.2d 588 (6th Cir.1972), and more frequently are made with the filing of a pro se complaint and with little or no showing of plaintiff's efforts to obtain counsel, or of plaintiff's financial ability to retain counsel. Also, there is very little in the record upon which the district judge can, for this purpose, determine whether the claim has merit. We believe that a practical approach to this issue of appealability, as the Supreme Court directs in Cohen, leads to the conclusion that an order denying appointment of counsel does not conclusively determine the disputed question prior to the district court's final disposition of the case unless the district court's order was expressly made final. 337 U.S. at 546, 69 S.Ct. at 1225. Accordingly, we determine that orders denying appointment of counsel in these cases cannot, on this appeal, be said to have conclusively determined the disputed question.
 
 II.
 
 21
 We believe Flanagan makes clear that the other two requirements for application of the collateral order rule are not satisfied here. These requirements are that the order resolve an important question completely separate from the merits of the action and that the order cannot effectively be reviewed on appeal from a final judgment. We do not, as Flanagan did not with respect to an order disqualifying counsel, decide whether an erroneous order denying appointment of counsel should be presumed prejudicial since such is not necessary to our decision here. Further following the rationale of Flanagan: if an erroneous order denying appointment of counsel is, upon appeal of a final judgment, presumed prejudicial, then the order is subject to effective review; if, on the other hand, an erroneous order denying appointment of counsel is not presumed prejudicial, then the order cannot be effectively reviewed without consideration of the merits of the case. We recognize that Flanagan was a criminal case and that, as the Court therein recognized, the policy against piecemeal appeals is particularly strong in criminal cases. We believe, however, the logic of the Court's opinion equally applies here.
 
 
 22
 The appellants argue that Roberts v. United States District Court, 339 U.S. 844, 70 S.Ct. 954, 94 L.Ed. 1326 (1950), in which the Court held that an order denying a habeas corpus applicant the right to proceed in forma pauperis is appealable under section 1291, is relevant here. But, as the Second Circuit stated in Miller v. Pleasure, 425 F.2d 1205 (2d Cir.), cert. denied, 400 U.S. 880, 91 S.Ct. 123, 27 L.Ed.2d 117 (1970), overruling Miller v. Pleasure, 296 F.2d 283 (2d Cir.1961), cert. denied, 370 U.S. 964, 82 S.Ct. 1592, 8 L.Ed.2d 830 (1962), in which that court held that an order denying appointment of counsel is not immediately appealable:
 
 
 23
 [T]he statement in Roberts v. United States District Court upholding the appealability of an order denying leave to proceed in forma pauperis is not truly apposite. Such an order closes the door to the courthouse to a plaintiff having a right to enter if he is indigent as he claims; an order declining to request an attorney to represent him simply denies an added facility in the prosecution of his claim which Congress has left to the discretion of the court. The growing burdens on the courts of appeals, with nearly three times as many appeals in 1969 as in 1960, requires [sic] us to look on appeals alleged to come under the "collateral order" doctrine of Cohen v. Beneficial Industrial Loan Corp. with greater care than a decade ago.
 
 
 24
 425 F.2d 1205, 1205 (2d Cir.1970) (citations omitted).
 
 III.
 
 25
 It is argued that the legislative history of Title VII, which emphasizes the importance of counsel to represent plaintiffs in these often complicated cases, somehow supports the contention that orders denying appointment of counsel are immediately appealable. We believe the answer to this argument is that, if Congress had intended to make these orders immediately appealable, it would have done so. We believe the more reasonable interpretation of this legislative history is that Congress, by providing for appointment of counsel, 42 U.S.C. Sec. 2000e-(5)(f)(1)(B), and for recovery of attorney's fees by the prevailing party, 42 U.S.C. Sec. 2000e-5(k), in Title VII cases, considered that it had done enough to insure that claimants with meritorious cases would have counsel. It should also be remembered that 28 U.S.C. Sec. 1915(d), the provision for appointment of counsel in cases brought under 42 U.S.C. Sec. 1983, does not have that legislative history; yet it is conceded that the question of appealability is the same whether counsel is sought under Title VII or under 28 U.S.C. Sec. 1915(d). Last, while the availability of appropriate counsel for appointment may vary greatly from district to district, it is well known that the district court's burden is lightened by the presence of appointed counsel so the district court has a real incentive, for this reason alone, to appoint counsel.
 
 
 26
 It is also argued that actions brought under Title VII and actions brought under 42 U.S.C. Sec. 1983, being civil rights actions, are so important that an exception should be made for them and that orders denying appointment of counsel in such cases should be deemed immediately appealable. Appellants, however, advance no reason why non-civil rights actions for which appointment of counsel may be sought under 28 U.S.C. Sec. 1915(d) should, for immediate appealability purposes, be treated as less important than civil rights cases. We do not believe that we should accept appellants' invitation to establish a hierarchy of cases as a basis for immediate appealability of orders denying appointment of counsel. This is a legislative function, see Coopers & Lybrand, infra.
 
 
 27
 The Supreme Court, in its unanimous opinion in Coopers & Lybrand, not only refused to treat the importance of the cases as a basis for allowing immediate appeal of an interlocutory order; it also refused to allow the appeal of the interlocutory order on the ground that, if the order stood, it would be the "death knell" of the case. In Coopers & Lybrand, the district court denied class certification under Fed.R.Civ.P. 23, and the plaintiffs appealed this denial. The court of appeals took jurisdiction under section 1291 on the ground that, if the action was not allowed to proceed as a class action, it would not proceed at all because plaintiffs could not or would not finance the prosecution of the action. The court of appeals then reversed the district court's denial of class action status. Upon granting certiorari, the Supreme Court reversed, holding the court of appeals had no jurisdiction. The Court stated:
 
 
 28
 In addressing the question whether the "death knell" doctrine supports mandatory appellate jurisdiction of orders refusing to certify class actions, the parties have devoted a portion of their argument to the desirability of the small-claim class action. Petitioner's opposition to the doctrine is based in part on criticism of the class action as a vexatious kind of litigation. Respondents, on the other hand, argue that the class action serves a vital public interest and, therefore, special rules of appellate review are necessary to ensure that district judges are subject to adequate supervision and control. Such policy arguments, though proper for legislative consideration, are irrelevant to the issue we must decide.
 
 
 29
 There are special rules relating to class actions and, to that extent, they are a special kind of litigation. Those rules do not, however, contain any unique provisions governing appeals. The appealability of any order entered in a class action is determined by the same standards that govern appealability in other types of litigation. Thus, if the "death knell" doctrine has merit, it would apply equally to the many interlocutory orders in ordinary litigation--rulings on discovery, on venue, on summary judgment--that may have such tactical economic significance that a defeat is tantamount to a "death knell" for the entire case.
 
 
 30
 Though a refusal to certify a class is inherently interlocutory, it may induce a plaintiff to abandon his individual claim. On the other hand, the litigation will often survive an adverse class determination. What effect the economic disincentives created by an interlocutory order may have on the fate of any litigation will depend on a variety of factors.
 
 
 31
 ....
 
 
 32
 Accordingly, we hold that the fact that an interlocutory order may induce a party to abandon his claim before final judgment is not a sufficient reason for considering it a "final decision" within the meaning of Sec. 1291.
 
 
 33
 Coopers & Lybrand v. Livesay, 437 U.S. 463, 470, 477, 98 S.Ct. 2454, 2458, 2462, 57 L.Ed.2d 351 (1978) (footnotes omitted).
 
 
 34
 The immediate appealability of an order denying appointment of counsel could have some untoward consequences for the pro se plaintiff. If an interlocutory order denying appointment of counsel were, as a collateral order under the Cohen exception, a final decision under section 1291, then it would be final for all purposes. If the order was a separate document under Fed.R.Civ.P. 58 and was entered as provided under Fed.R.Civ.P. 79(a), then the time for filing a notice of such an appeal "as of right" would, under Fed.R.App.P. 4(a)(1), begin to run immediately.[7] Herein would certainly lie a trap for the unwary pro se plaintiff. Thus, a decision by this court that orders denying appointment of counsel are final decisions under section 1291 would cause the pro se plaintiff to lose his right to appeal or force him to appeal forthwith. The first possibility creates an unnecessary burden on pro se plaintiffs. The second possibility, which is that pro se plaintiffs aware of their right will immediately appeal the district court's denial of their motion for appointment of counsel, creates an unnecessary burden on the court of appeals. Moreover, these forced appeals to determine if the district court abused its discretion would frequently be on records that would not reflect the pro se plaintiff's best case for obtaining appointment of counsel.
 
 
 35
 Accordingly, we hold that this court does not have jurisdiction of these appeals, and the appeals are dismissed.
 
 
 36
 It is so ORDERED.
 
 
 37
 MERRITT, Circuit Judge, concurring.
 
 
 38
 I concur in the opinion of the Court and in its reasoning, and I disagree with the strongly worded, acidulous dissenting opinion. I see no reason to carve out an exception to rules of appealability for civil rights cases. Such cases are no more or less sacrosanct than numerous other types of federal cases for which a lawyer may be appointed. Whether an error has been made respecting the appointment of counsel in civil rights cases can be corrected just as easily after final judgment as in other cases. There is no reason to distinguish civil rights cases from habeas corpus, social security and criminal cases. Once a final judgment is entered, we can review the actions of the District Court regarding legal counsel, just as we review actions on other motions. The number of cases in the federal Courts of Appeal has risen tenfold in the last 20 years. There is no reason to add piecemeal appeals to our present case load by making interlocutory rulings in civil rights cases immediately appealable.
 
 
 39
 CONTIE, Circuit Judge, concurring.
 
 
 40
 Although I fully agree with the result reached by the majority and with the bulk of its reasoning, I do not agree with the majority that the district courts in these cases did not conclusively determine the appointment of counsel issue. The majority acknowledges the general principle that even if a district court has jurisdiction to alter a prior ruling, a district court nevertheless conclusively decides an issue so long as no further consideration of the issue is contemplated. See In re General Motors Corporation Engine Interchange Litigation, 594 F.2d 1106, 1118 (7th Cir.), cert. denied, 444 U.S. 870, 100 S.Ct. 146, 62 L.Ed.2d 95 (1979); 15 C. Wright, A. Miller and E. Cooper, Federal Practice and Procedure Sec. 3911 (1976 & Supp.1984). Since the district court orders in these cases meet this standard, I would hold that the orders conclusively decided the issue in question.
 
 
 41
 The majority creates a narrow exception to the general rule in situations involving denials of appointed counsel. Instead of presuming that a district court order, which on its face contemplates no further consideration of the appointment of counsel issue, conclusively disposes of that issue, the majority presumes that a district court order denying appointed counsel is tentative unless the district court says otherwise. In my view, creating such an exception is unnecessary because district courts are just as capable of drafting language demonstrating that a denial of appointed counsel is tentative as they are of drafting language indicating that a denial of appointed counsel is conclusive. Since the majority creates an unnecessary exception to the general rule that a district court conclusively decides an issue when the language of its order indicates that no further consideration of that issue is contemplated, I do not concur in Section I of the majority opinion. I join in the result reached by the majority and in the remainder of the majority opinion.
 
 
 42
 KRUPANSKY, Circuit Judge, dissenting, joined by GEORGE CLIFTON EDWARDS, Jr., KEITH and NATHANIEL R. JONES, Circuit Judges.
 
 
 43
 For the reason that the majority decision pragmatically strips a victim of civil rights violations of effective legal representation, and is unsupported in logic, law, or equity, I must respectfully dissent.
 
 
 44
 Decisions denying the appointment of legal counsel for victims of civil rights violations at the inception of an action must be immediately appealable if the enabling legislation is to be meaningful and effective.
 
 
 45
 The majority opinion is plumbed upon the unsupported conclusory hypothesis that dispositions of motions to appoint counsel are "inherently tentative" since trial judges may reconsider their ruling as the pro se complainant develops the evidence during trial.[1]
 
 
 46
 The majority's observation that the decision to deny the appointment of legal counsel for victims of civil rights violations is subject to a trial judge's change of heart or mind is irrefutably correct. It is this very truism which prompted this controversy; had the initial decision to deny legal counsel assumed the classical status of a final disposition the issue of interlocutory review would be non-existent. Because the precedent articulated by Cohen subsumes the premise that a trial court may at any time, even after judgment, reconsider its decision, it is reasonable to conclude that the Supreme Court's decision in Cohen contemplated a far more subtle evaluation than the simplistic postulation of the majority opinion.
 
 
 47
 In Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), the issue joined was whether a decision denying the defendant's motion to require plaintiff to post bond in a stockholder's derivative action was a final order. Although the Court stated that trial court decisions which were "tentative", "open, unfinished or inconclusive" were not appealable as of right, 337 U.S. at 546, 69 S.Ct. at 1225-1226, the decision denying defendant's motion requiring the plaintiff to immediately post bond was appealable, because "the District Court's action upon this application was concluded and closed and its decision final in that sense before the appeal was taken". Id. (emphasis added).
 
 
 48
 The majority opinion correctly concludes and the parties to this litigation concede that, to prevail, the appellants must qualify the decision to deny appointment of legal counsel to victims of civil rights violations within the pronouncements of Cohen as a decision that falls into "that small class which finally determines claims of right separable from and collateral to, rights asserted in the action too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated". In construing the language of 28 U.S.C. Sec. 1291, the Cohen court stated that "[t]he court has long given this provision of the statute this [a] practical rather than a technical construction".
 
 
 49
 The Supreme Court in Coopers & Lybrand v. Livesay, 437 U.S. 463, 470-477, 98 S.Ct. 2454, 2458-2459, 57 L.Ed.2d 351 (1978) distilled the definitions of the collateral order doctrine initially articulated in Cohen when it restated that to qualify as final, an order must (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment. Accordingly, it is against the criteria defined in Cohen that the decisions here in issue must be evaluated. Conspicuously ignoring the criteria against which a "final decision" must be measured, the majority opinion is anchored upon the tenuous hypothecation "that orders denying appointment of counsel should be presumed tentative", because, the majority conjectures, "these motions are sometimes made before filing of a complaint, ... and more frequently are made with the filing of a pro se complaint". A review of the teachings of Cohen and its progeny as applied herein fail to support the majority's presumption because no factor necessary for the decision to appoint counsel requires an insight into the merits of the plaintiff's underlying cause of action beyond those which are available to the court at the time of the request. Jenkins v. Chemical Bank, 721 F.2d 876, 880 (2d Cir.1983) ("the district court should exercise its discretion by examining the record at the time of appellant's pre-trial requests for counsel. The question of appointment of an attorney is a preliminary inquiry and should not be based upon the evidence adduced at trial").
 
 
 50
 Addressing, in the first instance, the criterion of "conclusiveness" of a disputed issue, my attention is directed to the Supreme Court's application of Cohen in Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981), to the denial of a defendant's motion to disqualify an adversary's legal counsel of choice. Therein, the seven-member majority observed that the "conclusiveness" test was satisfied "because the only issue is whether challenged counsel will be permitted to continue his representation". 449 U.S. at 375-76, 101 S.Ct. at 674. Certainly the majority cannot seriously argue that a decision denying appointment of counsel to a civil rights plaintiff is any less conclusive than one denying a motion to disdquality an adversary's counsel of choice.
 
 
 51
 Proceeding to the determination of the second criterion of Cohen, namely, whether the denial of legal counsel to victims of civil rights violations is "separable from, and collateral to, rights asserted in the action", I would apply not the unsupported presumption of the majority but rather the analysis of the Cohen doctrine. 337 U.S. at 546, 69 S.Ct. at 1225-1226. The general subject of the litigation underlying this appellate review is the alleged violation of civil rights, i.e., employment discrimination because of race in two instances, employment discrimination because of national origin in one instance and, lastly, a prisoner's civil rights action. It is conceded by the parties and the majority opinion recognizes that the appointment of legal counsel for victims of civil rights violations is a preliminary matter necessitating the trial court's inquiry into the plaintiff's financial resources, his efforts to obtain legal counsel, and the facial merits of the plaintiff's cause of action.
 
 
 52
 Patently, the Court's inquiry into the plaintiff's financial resources and his efforts to obtain legal counsel are inquiries that may be considered independently from the merits of the controversy without becoming "enmeshed". The majority does not contend to the contrary. The criterion which causes the majority of my colleagues some consternation is whether the plaintiff's underlying cause of action is meritorious. Disposition of this issue requires only that the plaintiff's claim has some merit, a showing satisfied by an examination of the plaintiff's complaint to determine if it properly states a facially nonfrivolous cause of action. This initial inquiry is not of such scope or magnitude as to require the court to become "enmeshed" in a disposition of the merits of the plaintiff's underlying cause of action. See Poindexter v. F.B.I., 737 F.2d 1173, 1187 (D.C.Cir.1984); Nelson v. Redfield Lithograph Printing, 728 F.2d 1003, 1005 (8th Cir.1984); Bradshaw v. Zoological Society of San Diego, 662 F.2d 1301, 1308 (9th Cir.1981).[2]
 
 
 53
 To summarize, the resolution of a motion to appoint counsel involves a preliminary matter, i.e. the conclusive determination as to how the trial shall proceed on the merits, i.e. with or without counsel. The issue on its face is "separate from, and collateral to, rights asserted in the action". The resolution concerning the evaluation of merits of the plaintiff's cause of action involves a minimal and incidental inquiry by the Court which in no way enmeshes it in the underlying cause of action itself and the decision to appoint counsel is so mutually independent from the merits of the plaintiffs underlying cause of action and of such critical importance to the conduct of the trial that appellate consideration cannot be deferred to the conclusion of the trial of the case on its merits without irreparable prejudice to the plaintiff.
 
 
 54
 The majority opinion misconstrues the argument concerning the impact of the congressional intent as reflected by the legislative history of Title VII on decisions to appoint counsel with the casual observation "that if Congress had intended to make these orders immediately appealable, it would have done so". The significance of the congressional intent attaches not to the immediate appealability of a decision denying the appointment of counsel, but rather to the dictates of Cohen criterion that the decision is "too important to be denied review ... until the whole case is adjudicated". Cohen, 337 U.S. at 546, 69 S.Ct. at 1226. The promulgation of 42 U.S.C. Sec. 2000e-5(f)(1)(B) and Sec. 2000e-5(k) reflected the deep concern of Congress for the financially inadequate and legally unsophisticated civil rights plaintiff, pitted against his highly trained and skilled legal adversary in an arena of specialized knowledge and technical complexity, by placing emphasis upon the importance of professional legal representation in civil rights cases and by providing for the appointment of counsel. The issue of the judicial implementation of the congressional mandate and its immediate appealability was left undisturbed within the pronouncement of the Supreme Court in Cohen and its progeny.
 
 
 55
 In approaching a consideration of the final inquiry mandated by the Cohen trilogy, I am once again mindful of the Court's admonition to accord its rule a "practical rather than technical construction".
 
 
 56
 In deliberating the review of an interlocutory decision denying appointment of counsel on an appeal from a final judgment on the merits of a case in a practical rather than technical sense, it is apparent that Cohen and its progeny demand something more than merely a procedurally available appeal. Those decisions mandate a formulation of appealability that emphasizes and insures an effective and timely review, not one to be undertaken at some point distant in time that will be too late to meaningfully review the decision denying appointment of counsel and prevent the irreparable loss of the rights conferred by the statute.
 
 
 57
 At the expense of being repetitious, it should be emphasized that the sensitivity of the congressional conscience to protect civil rights and the importance it placed upon the implementation of the practices and procedures necessary to guard against infringements of these constitutionally protected entitlements is mirrored in the promulgation of legislative enactments designed to insure the appointment of legal counsel for indigent victims. 42 U.S.C. Sec. 2000e-5(f)(1)(B), 28 U.S.C. Sec. 1915(d).[3]
 
 
 58
 A denial of an indigent's right to professional legal representation through timely appointment of legal counsel in advance of the trial of his cause on its merits asserted under legislation which both controls the substance of the litigation and specifically provides for such legal assistance to the indigent without affording an immediate appeal from that decision if it is otherwise qualified under the tenets of Cohen and to intentionally compel such a plaintiff, incapable of prosecuting his claim, to proceed pro se to ineptly and in ignorance expose his case to the deft and merciless scalpel of a highly trained, and experienced defense counsel for methodical dissection and ultimate destruction and to further aggravate this scenario at the appellate level by again pitting the identical ignorance and ineptitude against professionalism and skill is a patent denial of the victimized individual's constitutionally guaranteed right of access to the courts to vindicate a constitutionally or congressionally created right. It was to precisely guarantee this effective access to the courts that Congress mandated the appointment of counsel for pro se litigants.
 
 
 59
 The majority would erroneously equate effective unreviewability with jurisdictional unreviewability. The distinction between Cohen reviewability and that proposed by my colleagues was aptly stated in Robbins v. Maggio, 750 F.2d 405, at 413 (5th Cir.1985), wherein the court commented:[I]t is technically true ... that a litigant denied appointment of counsel may proceed pro se....., it is the likelihood that a litigant will not be able effectively to prosecute his claim or to appeal that determines the reviewability of that claim rather than the theoretical existence of the right to proceed with a claim.
 
 
 60
 In Bradshaw v. Zoological Society v. San Diego, 662 F.2d 1301, 1311-1318 (9th Cir.1981), the court exhaustively explored the issue of effective pro se representation which analysis was conveniently avoided by the majority herein. That evaluation demonstrated that delayed appeals realistically and practically deny effective review and result in a highly prejudicial impact upon the important constitutional and statutory rights involved.[4]
 
 
 61
 Thus, a decision to deny counsel for a pro se civil rights litigant is the denial of an "asserted right, the legal and practical value of which would be destroyed if it were not vindicated before trial". Firestone, 449 U.S. at 377, 101 S.Ct. at 675 (quoting United States v. MacDonald, 435 U.S. 850, 860, 98 S.Ct. 1547, 1552, 56 L.Ed.2d 18 (1978)). See Robbins v. Maggio, 750 F.2d at 413.
 
 
 62
 The majority attempts to discredit the appellants arguments in support of interlocutory appeal by citing to the pronouncements of Flanagan v. United States, 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984) as authority for its conclusion that a decision denying appointment of counsel is effectively reviewable on appeal from a final judgment on the merits of the cause. At the outset, it should be noted that the cases factually common to Flanagan do not address the constitutional infringement of access to the courts by refusing legal representation to pro se civil rights plaintiffs. To the contrary, in Flanagan and factually related cases parties adversely affected by a court's disqualification order were represented throughout the respective proceedings by effective legal counsel albeit not of the party's choice.
 
 
 63
 In Flanagan, the Supreme Court decided that orders granting motions to disqualify counsel were not appealable in criminal cases. The court reasoned that the constitutional right to a speedy trial had to be factored into the analysis and demanded a confined application of the Cohen collateral order doctrine in the criminal context. 104 S.Ct. at 1055. The court concluded that an order which disqualified counsel of choice in a criminal case was not sufficiently distinct from the trial on the merits of the criminal prosecution to justify an immediate review because prejudice to a criminal defendant is not presumed in the consideration of a disqualification order as it would be presumed if a criminal defendant was denied his right to appointed legal counsel. The court concluded that a criminal defendant's constitutional rights were not violated unless the disqualification order prejudiced his defense. The court went on to reason that prejudice, if any resulted, could not be meaningfully perceived until after the conclusion of the trial; consequently, the disqualification order did not constitute a separate and collateral issue which was immediately appealable. 104 S.Ct. at 1056.
 
 
 64
 It is apparent from the Court's discussion that the application of Cohen to criminal cases differs significantly from its application in civil litigation. The court's precise language in Flanagan, 104 S.Ct. at 1054, concisely stated:
 
 
 65
 Because of the compelling interest in prompt trials, the Court has interpreted the requirements of the [Cohen ] collateral order exception to the final judgment rule [of Sec. 1291] with the utmost strictness in criminal cases. .... The exceptions to the final judgment rule in criminal cases are rare.
 
 
 66
 This distinction was previously recognized in United States v. Hollywood Motor Car, 458 U.S. 263, 265, 102 S.Ct. 3081, 3082, 73 L.Ed.2d 754 (1982), and United States v. MacDonald, 435 U.S. 850, 853, 98 S.Ct. 1547, 1549, 56 L.Ed.2d 18 (1978). Other courts have also recognized the difference and declined to apply Flanagan in the civil context. Robbins v. Maggio, 750 F.2d 405, 410-11 (5th Cir.1985); American Protection Ins. Co. v. MGM Grand Hotel--Las Vegas, Inc., 765 F.2d 925 (9th Cir.1985); Panduit Corp. v. All States Plastic Mfg. Co., 744 F.2d 1564 (Fed.Cir.1984); Koller v. Richardson-Merrell, 737 F.2d 1038 (D.C.Cir.), cert. granted, --- U.S. ----, 105 S.Ct. 290, 83 L.Ed.2d 226 (1984); Interco Systems, Inc. v. Omni Corporate Services, 733 F.2d 253 (2d Cir.1984). But see Gibbs v. Paluk, 742 F.2d 181 (5th Cir.1984). The court has permitted the application of Cohen within a criminal context on only three occasions: Stack v. Boyle, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 1 (1951), denial of a motion to reduce bail; Abney v. United States, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), denial of a motion for dismissal of a criminal defendant asserting a double jeopardy defense, and Helstoski v. Meanor, 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979), denial of a motion of dismissal predicated upon a claim under the "speech and debate" clause of the Constitution.
 
 
 67
 The review conceived by Cohen and its progeny requires, not a procedurally available appeal, but rather, an effective meaningful appellate review. Within this context, the majority's reference to Coopers & Lybrand v. Livesay erodes rather than fortifies its argument. Initially, the majority ignores the critical distinction between a decision denying appointment of legal counsel and a Coopers & Lybrand v. Livesay order denying class certification. The Supreme Court's discussion in that case, with obvious clarity, isolated class actions into a special unique classification and circumscribed its decision, specifically, to class actions. In simple language, the court stated at 98 S.Ct. 2459:
 
 
 68
 There are special rules relating to class actions and, to that extent, they are a special kind of litigation.
 
 
 69
 In denying class certification decisions access to the "small class" of decisions excepted from the final judgment rule by Cohen the Coopers & Lybrand v. Livesay court reasoned that a class determination generally involves considerations that are intimately enmeshed in the factual and legal issues comprising the merits of plaintiff's cause of action; that such decisions of the trial court incorporate issues concerning class determination, typicality of representatives' claims or defenses, the adequacy of the class representative, the presence or absence of common issues of law or fact, all of which are developed through exhaustive discovery; and which intrude upon the factual and legal issues comprising the plaintiff's underlying cause of action; and finally, an order denying class certification is subject to effective review after final judgment by the named plaintiff or intervening class members.
 
 
 70
 The appellees have, with great success, subtly misdirected the logic of the majority by distracting their attention with a convoluted interpretation of the Cohen and "death knell" doctrines. Appellants, to my understanding of the arguments, have not urged or even suggested that the special recognition and treatment inherent to the "death knell" doctrine be accorded to orders denying appointment of counsel in civil rights cases. The "death knell" argument, permanently laid to rest by the Supreme Court in Coopers & Lybrand v. Livesay, was resurrected by the appellees. Its precedential value to the case at bar is a mystery and any parallel factual relationship is nonexistent. If the "death knell" doctrine is intended to equate an order denying appointment of counsel to the "death knell" of a pro se plaintiff's cause of action, the majority again misconstrues the teachings of both Cohen and Coopers & Lybrand v. Livesay. The Cohen collateral order thesis which has its genesis in 28 U.S.C. Sec. 1291, and which provides for an appeal of right from all final decisions of federal district courts on the merits of a case, defines the criterion to qualify an interlocutory order as final within the terms of that statute. Whereas the "death knell" theory as conceived in Eisen v. Carlisle & Jacquelin, 370 F.2d 119 (2d Cir.1966), cert. denied, 386 U.S. 1035, 87 S.Ct. 1487, 18 L.Ed.2d 598, was proposed as a special rule to confer immediate appellate review in class actions which were characterized by the court as unique actions that served the public interest and deserved special rules of appellate review. The "death knell" argument attempted no pretext of evolving from the final judgment requirements of Sec. 1291. Justice Stevens in his Coopers & Lybrand decision briefly identified the issue:
 
 
 71
 An order refusing to certify, or decertifying, a class does not of its own force terminate the entire litigation because the plaintiff is free to proceed on his individual claim. Such an order is appealable, therefore, only if it comes within an appropriate exception to the final-judgment rule.
 
 
 72
 437 U.S. at 467, 98 S.Ct. at 2457. Then, in remarkably clear terms, he delineated the two "appropriate exception(s) to the final judgment rule" argued by the respondents:
 
 
 73
 In this case respondents rely on the "collateral order" exception articulated by this Court in Cohen ..., and on the "death knell" doctrine adopted by several Circuits to determine the appealability of orders denying class certification.
 
 
 74
 437 U.S. at 467-68, 98 S.Ct. at 2457 (emphasis added).
 
 
 75
 The court recognized the separateness of the "death knell" presentation in Coopers & Lybrand v. Livesay and rejected, in no uncertain terms, that the proposal be recognized as a new and distinct exception to the general rule of finality deserving of a special application to class actions because of the public interest served.[5]
 
 
 76
 The essence of the "death knell" argument arises not from a denial of the constitutional right of access to the courts, but from a voluntary election to abandon a class action by balancing that decision on a scale of economic feasibility--is it "worth it" to proceed. The court consistently emphasized the economic justification to ignore the rule of finality. Cohen, 337 U.S. at 546, 69 S.Ct. at 1226. See also Moses H. Cone Memorial Hospital v. Mercury Construction Corporation, 460 U.S. 1 at 12 n. 14, 103 S.Ct. 927 at 935 n. 14, 74 L.Ed.2d 765 (1983); Coopers & Lybrand v. Livesay, 437 U.S. at 471, 98 S.Ct. at 2459.[6]
 
 
 77
 Accordingly, since a decision denying appointment of legal counsel to victims of civil rights violations comes four square within that small class of cases which finally determine claims of right separable from, and collateral to, rights asserted in the underlying action on the merits, too important to be denied review and too independent of underlying cause itself to require that appellate consideration be deferred until the entire case is adjudicated and which qualifies under the criteria of Cohen v. Beneficial Loan Corporation and its progeny, and for the reasons hereinbefore stated, I herewith respectfully enter my dissent.
 
 
 78
 NATHANIEL R. JONES, Circuit Judge, dissenting, joined by GEORGE CLIFTON EDWARDS, Jr., Circuit Judge.
 
 
 79
 Although I agree fully with the reasoning of Judge Krupansky's dissent, I dissent separately to emphasize, under the circumstances here, the appropriateness of recognizing an exception for civil rights cases. As Judge Krupansky notes, supra page 768 n. 3, Congress itself provides support for treating civil rights cases different from civil or criminal cases. In adopting 42 U.S.C. Sec. 2000e-5f(1)(B), Congress expressly recognized that a distinctive characteristic of civil rights plaintiffs is membership in a disadvantaged class. By contrast, civil rights defendants are typically institutions, capable of wielding great resources and mustering extensive legal talent. H.R.Rep. No. 238, 92d Cong., 2d Sess., reprinted in 1972 U.S.Code Cong. & Ad.News 2137, 2140. The civil rights action itself involves discovery and motions practice so complex that the plaintiff may drop the case before trial. Along with Judge Krupansky and the Ninth Circuit, I am unwilling to assume "that civil rights plaintiffs are capable of prosecuting their own cases through trial ... [and] that should they somehow succeed in doing so, they will have the determination and capability to perfect and conduct appeals properly and fully after they lose." Bradshaw v. Zoological Society of San Diego, 662 F.2d 1301, 1310 (9th Cir.1981). Such a notion wars with reality. It seems to me that Congress has spoken clearly on its desire that civil rights cases be decided on their merits and that counsel be appointed when necessary to assure this. As judges, our task is to strive to conform to the will of Congress, not to contest it. The position advanced in the dissent is in conformity with Congressional intent.
 
 
 
 *
 Honorable George Edwards took senior status January 15, 1985
 
 
 [1]
 28 U.S.C. Sec. 1291 provides in relevant part: "The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States...."
 
 
 [2]
 For actions brought under Title VII, 42 U.S.C. Sec. 2000e-5(f)(1)(B) provides in relevant part that "[u]pon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant...."
 
 
 [3]
 28 U.S.C. Sec. 1915, in addition to authorizing the commencement of any civil action without prepayment of fees and costs upon making an affidavit that plaintiff is unable to pay costs or give security, further provides in relevant part in subsection (d): "[t]he court may request an attorney to represent any such person unable to employ counsel...."
 
 
 [4]
 Five circuits have held that such orders are not immediately appealable: Smith-Bey v. Petsock, 741 F.2d 22 (3d Cir.1984); Appleby v. Meachum, 696 F.2d 145 (1st Cir.1983); Randle v. Victor Welding Supply Co., 664 F.2d 1064 (7th Cir.1981), overruling Jones v. WFYR Radio/RKO General, 626 F.2d 576 (7th Cir.1980); Cotner v. Mason, 657 F.2d 1390 (10th Cir.1981); Miller v. Pleasure, 425 F.2d 1205 (2d Cir.), cert. denied, 400 U.S. 880, 91 S.Ct. 123, 27 L.Ed.2d 117 (1970), overruling Miller v. Pleasure, 296 F.2d 283 (2d Cir.1961), cert. denied, 370 U.S. 964, 82 S.Ct. 1592, 8 L.Ed.2d 830 (1962). Four circuits have held such orders are immediately appealable: Slaughter v. City of Maplewood, 731 F.2d 587 (8th Cir.1984); Brooks v. Central Bank of Birmingham, 717 F.2d 1340 (11th Cir.1983); Bradshaw v. Zoological Society of San Diego, 662 F.2d 1301 (9th Cir.1981); Hudak v. Curators of the University of Missouri, 586 F.2d 105 (8th Cir.1978), cert. denied, 440 U.S. 985, 99 S.Ct. 1799, 60 L.Ed.2d 247 (1979); Caston v. Sears, Roebuck & Co., 556 F.2d 1305 (5th Cir.1977)
 
 
 [5]
 Appellants were ably represented on appeal by court appointed counsel John Gleeson, of the firm of Cravath, Swaine and Moore of New York City. Mr. Gleeson was formerly a law clerk for a judge of this court
 
 
 [6]
 This was expressly held in Slaughter v. City of Maplewood, 731 F.2d 587, 589 (8th Cir.1984)
 
 
 [7]
 Citibank, N.A. v. Data Lease Financial Corp., 645 F.2d 333, 338 (5th Cir.1981); Durkin v. Mason & Dixon Lines, 202 F.2d 425, 425-26 (6th Cir.1953)
 
 
 [1]
 Only one case has questioned the conclusiveness of an order denying counsel. Appleby v. Meachum, 696 F.2d 145 (1st Cir.1983). In that case, the court, at the conclusion of a two-page opinion disposing of the case on other grounds, gratuitously injected dicta characterizing such orders as inconclusive
 
 
 [2]
 The separability requirement must also be given a practical construction. As articulated in Cohen, it mandates that collateral orders considered for immediate review be not a part of determinations on the merits. In Coopers & Lybrand the Supreme Court further explained the separability criterion by requiring the subject matter of a collateral order be reviewable only if it was discrete and not intimately related to the substance of the claim. In Coopers & Lybrand the Court held that the class certification issue was too "enmeshed in the factual and legal issues" of the lawsuit to allow for a neat extraction of the question from the entirety of the proceeding for the purposes of immediate appeal
 This was sound reasoning. As has been noted, see Bradshaw, supra, 662 F.2d at 1307, the class certification determination required detailed and exhaustive factual development of issues such as typicality, adequacy, and a common question; extensive discovery is frequently required. On the other hand, the evaluation required by the appointment decision is brief and easily accomplished. Indeed, it is little more than, and very similar to, a trial court's evaluation of the complaint for assurance that it has jurisdictional authority over the cause. It "simply requires the court to recognize that the underlying claim has some merit.... The reference to the merits required.... is minimal and incidental". Id. at 1308.
 
 
 [3]
 Congress has also indicated its understanding of the difficulties faced by civil rights litigants. H.R.Rep. No. 238, 92d Cong., 2d Sess., reprinted in 1972 U.S.Code Cong. & Ad.News, 2137, 2148 (emphasis added)
 Prior to 1972 the E.E.O.C. had only conciliation powers in obtaining compliance with Title VII of the 1964 Civil Rights Act. Congress significantly strengthened the enforcement powers of the E.E.O.C. in 1972 because of dissatisfaction with implementation of Title VII. While empowering the E.E.O.C. to initiate litigation on behalf of Title VII complainants, the 1972 Amendments also re-enacted the provisions authorizing private individuals to initiate their own civil actions. House Report No. 92-238 on the Equal Employment Opportunity Act of 1972 explains the importance of re-enacting the 1964 language on court appointed counsel. Because of E.E.O.C. staff shortages, parties had to wait up to three years for final conciliation procedures to be instituted. 1972 U.S.Code Cong., & Ad News, 2137, 2147-48.
 As previously pointed out, Congress recognized that a civil rights "complainant who is usually a member of a disadvantaged class, is opposed by an employer who not infrequently is one of the nation's major procedures, and who has at his disposal a vast array of resources and legal talent".
 This imbalance in civil rights litigation is at the center of the right to counsel issue because it illustrates the futility of a civil rights plaintiff who is unable to hire counsel proceeding pro se after rejection of such a motion for appointment of counsel. As Congress recognized, rejecting such a motion means that the final curtain drops before the play begins.
 
 
 [4]
 The comprehensive Bradshaw examination of the pro se litigant's practical barriers to a meaningful review remains the best explication of the litigant's problems:
 We consider it evident that the effectiveness of appellate review will be seriously impaired by the very nature of the order. A civil rights litigant, untrained in the law, may well decide that he is incapable of handling the trial and drop his claim, commence trial but be compelled to abandon his efforts prior to final judgment, fail on a technicality in any attempt to appeal should be an adverse final judgment on the merits ever be reached, or fail, for lack of legal knowledge, to make the requisite showing to obtain reversal.
 * * *
 The liability stage of a Title VII action is complex enough, but the issues involved in formulating the proper remedy strain the ability of many non-specialist practitioners, much less that of a plaintiff without legal training. Should [the plaintiff] obtain any recovery, she may well not pursue an appeal based on the insufficiency of the amount recovered, and should she obtain a monetary recovery, she may well not appeal even though she may be entitled, under the law, to the job she seeks. Without a thorough understanding of the complex legal issues involved and without the ability to appreciate or analyze the possible errors committed in the trial court, [the plaintiff] would hardly be in a position properly to evaluate the question whether an appeal should be taken.
 * * *
 [On appeal, the plaintiff] would be bound by the inevitable prejudicial errors she would make at her first trial should she manage subsequently to obtain a reversal and a new trial. She could, for example, be bound by or impeached with her earlier testimony, or suffer adverse consequences from uninformed and unwise stipulations.... We must thus be concerned not only with the mechanical complexities of Title VII litigation in the abstract, but also with the prejudicial consequences of a civil rights litigant's lack of capacity to divine and pursue an effective litigation strategy.
 * * *
 [I]t is not difficult to imagine--indeed, it is impossible to ignore--the irreparable injury that would result from a refusal to review an order denying a civil rights litigant appointed counsel. Because the likelihood that an applicant ... will be unable to proceed through trial and obtain effective review of the order is so high, and the prejudice inherent in proceeding to trial without counsel is so great, we do not view the injury that would inevitably result from a refusal to review the order before us as speculative or hypothetical.
 
 
 [5]
 In Coopers & Lybrand v. Livesay, the "death knell" adherents did not charge that the denial of certification was a final order. They were seeking a special exception to the final judgment rule. See 437 U.S. at 471, 98 S.Ct. at 2459. Strictly interpreted, Cohen does not pose an exception to the finality rule but an application of the statutory principles which inform Sec. 1291. Rather, it teaches that those principles properly applied and developed result in a more sophisticated understanding and application of Sec. 1291; the "death knell" principles ignore the final order requirements of Sec. 1291 in response to a perceived "vital public interest". As the Court noted, "[s]uch policy arguments, though proper for legislative consideration, are irrelevant to the issue we must decide". 437 U.S. at 470, 98 S.Ct. at 2459. Cf. Robbins v. Maggio, 750 F.2d 405, at 413 n. 11 (5th Cir.1985)
 
 
 [6]
 See Coopers & Lybrand v. Livesay, 437 U.S. at 469, 98 S.Ct. at 2458 ("[t]he 'death knell' doctrine assumes that without the incentive of a possible group recovery the individual plaintiff may find it economically imprudent to pursue his lawsuit"); id., 437 U.S. at 470, 98 S.Ct. at 2459 (the doctrine has "tactical economic significance" and "economic disincentives"); id., 437 U.S. at 471, 98 S.Ct. at 2459 (under the "death knell" appealability would turn on an evaluation of the economic impact of a pretrial order); id., 437 U.S. at 472-73, 98 S.Ct. at 2460 (doctrine formulates "an appealability rule that turns on the amount of the plaintiff's claim"). Cf. id. 437 U.S. at 470 n. 15, 472 n. 18, 98 S.Ct. at 2459 n. 15, 2460 n. 18. It is in the context of the Supreme Court's economic understanding of the "death knell" doctrine that the conclusion articulated by the Court in the final paragraph of the opinion, should be construed when it stated "that the fact that an interlocutory order may induce a party to abandon his claim before final judgment is not a sufficient reason for considering it a 'final decision' within the meaning of Sec. 1291". Id. 437 U.S. at 477, 98 S.Ct. at 2462