765 F.2d 145
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
MELVIN DONALD MURPHY, PLAINTIFF-APPELLANT,
v.
ROBERT GIBSON, ET AL., DEFENDANTS-APPELLEES.
 NO. 84-1342
 United States Court of Appeals, Sixth Circuit.
 5/24/85
 
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
 BEFORE: ENGEL and KRUPANSKY, Circuit Judges; and HULL*, District Judge.
 KRUPANSKY, Circuit Judge.
 
 
 1
 Plaintiff Melvin D. Murphy (Murphy) has appealed the entry of summary judgment in favor of the defendants in this Sec. 1983 litigation.
 
 
 2
 Examination of the complaint discloses the following assertions which the court must accept as true.
 
 
 3
 On May 22, 1982, plaintiff-appellant Murphy was a passenger in a vehicle operated by Ralph Prater (Prater); Kevin Brenner (Brenner) was also a passenger in that vehicle. Shortly before 11:00 p.m. that evening, defendant Robert Gibson, Chief of Police of Norvell Township (also a party-defendant) (Chief Gibson), observed Prater driving in an erratic fashion.
 
 
 4
 Chief Gibson stopped and questioned Prater. As a result of that inquiry, Prater was arrested for driving under the influence of alcohol. In response to the Chief's questions, Brenner falsely told Chief Gibson that he was licensed to drive. Brenner was intoxicated and Chief Gibson made no attempt to verify that Brenner had a valid driver's license.
 
 
 5
 Brenner drove off in Prater's vehicle with Murphy as his passenger. Prater's vehicle, a four-wheel drive 'Bronco', while in the Village of Brooklyn, apparently developed engine trouble and stalled. Defendants Mark Hunter and Michael Shadbolt, Brooklyn police officers, came upon the disabled vehicle and spoke with Brenner and Murphy. Although Brenner was intoxicated, when the vehicle was repaired the police officers permitted Brenner to operate the vehicle. Shortly thereafter, Brenner drove the Bronco off the roadway. In the ensuing accident, Murphy suffered injuries.
 
 
 6
 Eventually, Murphy instituted this Sec. 1983 action against Chief Gibson, Novell Township, officers Hunter and Shadbolt, the Village of Brooklyn, and the chief of the Brooklyn police department. Oral argument was entertained on the defendants' motion for summary judgment following which the district court granted the motion.
 
 
 7
 This timely appeal followed.
 
 
 8
 It is well settled that the function of a motion for summary judgment is not to afford a trial judge an opportunity to decide issues of fact, but merely to determine whether there was an absence of any genuine factual dispute material to the legal issues. E.g., Aetna Ins. Co. v. Cooper Wells & Co., 234 F.2d 342 (6th Cir. 1974). In this case summary judgment was entered upon the pleadings. This was not an inappropriate use of a rule 56 motion, see McWhirter Distributing Co., Inc. v. Texaco, Inc., 668 F.2d 511, 519 n. 11 (Temp. Emer. Ct. App. 1981). The effect of summary judgment--and the standard of review--is functionally the same as the rule 12(c) motion for judgment on the pleadings or rule 12(b)(6) motion for dismissal for the failure to state a claim. Bogosian v. Gulf Oil Corp., 561 F.2d 434, 444 (3d Cir. 1977), cert. denied, 434 U.S. 1086 (1978); Grzelak v. Calument Publishing Co., Inc., 579, 583 (7th Cir. 1975); Schwartz v. Compagnie General Translantique, 405 F.2d 270, 273 (2d Cir. 1978); 10 Wright, Miller & Krane, Federal Practice and Procedure, Sec. 2713 at 594 (2d Ed. 1985). Therefore, the allegations of the complaint must be accepted as true. Windsor v. The Tennessean, 719 F.2d 155, 158 (6th Cir. 1983), reh'g denied, 726 F.2d 277, cert. denied, ---- U.S. ----, 105 S.Ct. 105 (1984).
 
 
 9
 'The first inquiry in any Sec. 1983 suit is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws" of the United States. Baker v. McCollan, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979). Murphy argues that he 'was deprived by the Defendants of his Constitutional right to bodily integrity'. It is Murphy's theory that the defendants breached a state-imposed duty to arrest intoxicated drivers. That breach of duty, according to the appellant's theory, placed Murphy in a position of unreadonable danger of personal injury.
 
 
 10
 The police officers, under the facts as pleaded, may have violated their duty. However, the breach of a duty does not translate into a constitutional deprivation under the circumstances of this case.[1] Not every tort committed by the state rises to the level of a constitutional deprivation. Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Murphy does not aver anything beyond a state tort as support for his asserted constitutional deprivation. He relies on White v. Rochford, 592 F.2d 381 (7th Cir. 1979), which he argues is analogous to the case at bar.
 
 
 11
 In White v. Rochford, the defendant police officers arrested on a traffic violation the driver of a motor vehicle. The passengers of the vehicle were several very young children. The police refused to transport them to the police station, to a phone, or to summon assistance for the children. They were thus left in the abandoned car, on an eight lane highway, during a winter's night, to fend for themselves. The Seventh Circuit in White v. Rochford, in two separate opinions, determined that a Sec. 1983 complaint had been articulated. The two members of the majority turned their decision on the state's intrusion on the security of the children. Because the safety of the children was endangered as the result of the state's action, the failure of the police to provide protection from the danger which the state had created, gave rise to a Sec. 1983 claim for relief. This principle was stated in the concurring opinion of Judge Tone, as follows:
 
 
 12
 '[A] right to be free from, and to obtain judicial relief, for unjustified intrusions on personal security' was a 'liberty preserved from deprivation without due process' by the due process clause of the Fourteenth Amendment. [Ingraham v. Wright, 430 U.S. 651, 672-74, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977).] * * * The right to personal security can hardly consist only of freedom from direct bodily harm and exclude . . . freedom from unnecessary and unjustifiable exposure to physical danger or to injury to health.
 
 
 13
 In the case at bar, the children in the car had a federally protected right to be free from unjustified intrusions on their personal security by the police. Their personal security was under the protection of their uncle. If that protection was removed and no alternative protection was provided, they would be exposed to danger as occupants of an immobilized car on a high speed expressway and to the cold. Arresting the uncle and thus removing their protection, and yet leaving the children exposed to these hazards, was an unjustifiable intrusion on the children's personal security.
 
 
 14
 592 F.2d at 387 (footnote omitted). It is apparent that there is a critical difference between the case at bar and White v. Rochford. In the latter, the unpardonable action of the police created the personal integrity threat of which the plaintiffs complained, but in the case at bar the nonaction of the defendants did nothing to alter the danger faced by Murphy and they most assuredly did not create it. See generally Jackson v. City of Joliet, 715 F.2d 1200, 1204 (7th Cir. 1983), cert. denied, ---- U.S. ----, 104 S.Ct. 1325 (1984). Murphy can not claim a constitutional right to be protected from drunk drivers; the right protected by Sec. 1983 is limited to the right not to be harmed, or placed in danger, by a state actor. Jackson v. Joliet, supra; Bowers v. DeVito, 686 F.2d 616, 618 (7th Cir. 1982); Fox v. Custis, 712 F.2d 84, 88 (4th Cir. 1983). While the facts of this case may 'demonstrate an exercise of extremely poor judgment', they 'do not rise to the level of a constitutional deprivation'. Moore v. The Marketplace Restaurant, Inc., 754 F.2d 1336, ----, (7th Cir. 1985).
 
 
 15
 The other cases relied on by Murphy are also inapt. They involve situations wherein, as in White v. Rochford, the state was charged with a special duty to provide for the safety of the plaintiffs, Fitzke v. Shappell, 468 F.2d 1072 (6th Cir. 1972) (prisoner); Westlake v. Lucas, 537 F.2d 857 (6th Cir. 1976) (prisoner--medical attention); Shannon v. Lester, 519 F.2d 76 (6th Cir. 1975) (suspect in custody--medical attention); Wagar v. Hasenkrug, 486 F. Supp. 47 (D. Mont. 1980) (unconsicious drunk in protective custody placed in life-threatening situation by police); or, in one case, a conspiracy to deprive an arrestee of rights. Byrd v. Brishke, 466 F.2d 6 (7th Cir. 1972) (officers who watched arrestee being beaten held liable on conspiracy theory).
 
 
 16
 In the case at bar the state did not intrude upon and alter the personal security of Murphy. In all of the cases relied upon by Murphy, the state placed an individual in a hostile environment and thus removed the individual's normal protections or the ability to respond to threats (as in the medical treatment of prisoners cases). The state is a guarantor of neither highway nor personal safety. Although the defendants' conduct had much to be desired, Murphy does not state a Sec. 1983 cause of action in the circumstances of this case.
 
 
 17
 The judgment is affirmed with no costs taxed to the appellant.
 
 
 
 *
 Hon. Thomas G. Hull, Chief Judge, Eastern District of Tennessee, sitting by designation
 
 
 [1]
 At oral argument the court was informed that following the district court's dismissal of the within case, Murphy refiled his state tort claim--which had been a pendent claim below--in the Michigan state court. The state trial court held that the defendants were immune from suit. Murphy is currently pursuing that issue in the state appellate court