940 F.2d 661
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James M. PECSI, Plaintiff-Appellant,
v.
Thomas C. DOYLE, Detective; City of Eastlake, John Does,
unknown Eastlake Police Officers. Defendants-Appellees.
 No. 90-4039.
 United States Court of Appeals, Sixth Circuit.
 July 26, 1991.
 
 Before NATHANIEL R. JONES and SUHRHEINRICH, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is a fourth amendment case in which the plaintiff argues that his detention by police officers executing a valid search warrant was unconstitutionally prolonged. Finding that the five or six hour detention of plaintiff during the search was not unconstitutional, the district court granted defendants' motion for summary judgment. We find, however, that the issue of whether the length of the detention violated the fourth amendment is a question of fact for a jury. As a result, we reverse the summary judgment for defendants and remand for further proceedings.
 
 
 2
 * Plaintiff-appellant James M. Pecsi lived with his father, in a house owned by his father, at 35685 West Island Drive in Eastlake, Ohio. On February 9, 1988, Eastlake police arrived at the house, armed with a valid search warrant, to search for stolen property. The search warrant was supported by an affidavit from Detective Thomas Doyle. In the affidavit, Doyle stated that an informant and close associate of the Pecsis told the informant that Pecsi and his father had stolen a pontoon motor boat and trailer four years before in Pennsylvania. The Pennsylvania State Police confirmed the theft, and visual observations of the Pecsis by Eastlake police showed that the Pecsis were using the stolen items. The affidavit also contained a list of the items which were the focus of the search.
 
 
 3
 During the search, which (we assume for purposes of this appeal) lasted five or six hours, Detective Doyle and other police officers forced Pecsi to sit in a chair for two to three hours at gunpoint. The officers did not search Pecsi. After an attorney arrived, the police permitted Pecsi to move about the house if accompanied by an officer.
 
 
 4
 Pecsi filed his complaint under 42 U.S.C. Sec. 1983 on February 7, 1990 in the U.S. District Court for the Northern District of Ohio, alleging violations of the fourth and fourteenth amendments. On March 9, 1990, defendants filed a Motion for Judgment on the Pleadings pursuant to Fed.R.Civ.P. 12(c). The district court granted the motion with respect to Pecsi's fourteenth amendment due process claim, but found that Pecsi's fourth amendment claim could not be dismissed solely on the pleadings. The defendants filed a motion for summary judgment on the fourth amendment claim on July 23, 1990. On October 12, 1990, the district court dismissed the fourth amendment section 1983 claim against the City of Eastlake and Detective Doyle.
 
 
 5
 The district court found that Pecsi did not suffer any deprivation of a constitutional right because: (1) the police did not body search or arrest Pecsi; and (2) there was no "public stigma" because the detention was in Pecsi's home. Furthermore, the police had a substantial interest in reducing the risk to the officers and preventing the destruction of evidence. The district court also found that Doyle was entitled to qualified immunity because his actions were objectively reasonable under clearly established law, relying on Michigan v. Summers, 452 U.S. 692 (1981). Summary judgment as to the City of Eastlake was granted because Pecsi came up with no evidence of a policy or custom which caused his "injuries." This appeal of the fourth amendment issue followed.
 
 II
 
 6
 The district court correctly stated the standard of review on a summary judgment motion:
 
 
 7
 Summary judgment is appropriate where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. The moving party can meet its burden by demonstrating the absence of a genuine issue of material fact. Should the moving party meet its burden, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." Where, taking the record as a whole, reasonable minds can come to but one conclusion, there is no genuine issue of fact, and summary judgment may be granted.
 
 
 8
 J.App. at 120 (district court opinion) (citations omitted).
 
 
 9
 Pecsi argues that the length and nature of his detention were violations of the fourth amendment, citing Tennessee v. Garner, 471 U.S. 1, 8 (1985) ("[I]t is plain that reasonableness depends on not only when a seizure is made, but also how it is carried out."). Pecsi also relies on a footnote in Michigan v. Summers,[1] 452 U.S. 692 (1981), which states:
 
 
 10
 Although special circumstances, or possibly a prolonged detention, might lead to a different conclusion in an unusual case, we are persuaded that this routine detention of residents of a house while it was being searched for contraband pursuant to a valid warrant is not such a case.
 
 
 11
 452 U.S. at 705 n. 21 (emphasis added). Pecsi then suggests that summary judgment was not appropriate because the district court was required to make a finding of fact as to whether this case involved a "prolonged detention." Pecsi also argues that the manner of restraint--at gunpoint for several hours--was objectively unreasonable.
 
 
 12
 We agree with the government that "[o]fficers searching a location have the authority to detain the occupants while a proper search is conducted." United States v. Smith, 704 F.2d 723, 725 (4th Cir.), cert. denied sub nom. Palmer v. United States, 464 U.S. 817 (1983). See also United States v. Rowe, 694 F.Supp. 1420, 1424 (N.D.Cal.1988) ("Although the Summers Court did not define the duration of permissible detention, it apparently contemplated that occupants could be detained long enough for police to complete extensive searches."). However, the right to detain the occupant of a house for the length of the search is not limitless.
 
 
 13
 Our examination of the record in this case reveals questions relating to the reasonableness of the length of the search which should have precluded summary judgment. First, it is not clear that the search should have required five to six hours. The items on the list attached to Officer Doyle's affidavit were large and bulky, such as several chain saws, a television set, a tool box, a trailer, and two boats. The officers were not searching for small, easily concealable items which would necessitate a detailed search through every nook and cranny. Furthermore, Officer Doyle's February 1988 affidavit stated that many of the items could be found in the garage. The conclusion that locating the items listed in the warrant was not overly involved is supported by Officer Doyle's July 1990 affidavit, which stated that "[w]ithin 15 minutes after the search began, items reported stolen were discovered within the residence[.]" J.App. at 67.
 
 
 14
 In our view, this case simply presented too many unanswered factual questions to be resolved on summary judgment. For example, were the officers engaged in the search during the entire five to six hours? Were the objects listed in the warrant capable of secretion so as to justify a search of that length? Was it objectively reasonable to hold Pecsi at gunpoint for two to three hours during the search?
 
 
 15
 In addition, this is not a case involving a broadly worded search warrant in which the evidence could take several forms. See United States v. Santarelli, 778 F.2d 609, 615-16 (11th Cir.1985) ("[Although the informant] was able to describe several items ... he could not have known precisely what other evidence of loansharking the residence contained.... It follows that [defendant] would have no cause to object if the agents had entered his home to examine the documents and remained there as long as the search required."). In the case at bar, the search warrant provided a detailed and specific list of all the items sought; thus; the scope of the search was narrow.
 
 
 16
 The district court found that "the public stigma" was minimal because the detention was in Pecsi's home and because a body search or trip to the police station would be a comparatively greater intrusion. Although these factors are relevant considerations in evaluating the nature of the intrusion under Summers, 452 U.S. at 701-02, we emphasize that Summers contemplated that "a prolonged detention" could be a violation of the fourth amendment. Id. at 705 n. 21. The narrow holding of Summers is that officers executing a valid search warrant have "limited authority" to detain the occupants during the search. Id. at 705. Under the circumstances of this case, we are unable to conclude that this "limited authority" extends to a five to six hour detention when the items listed in the affidavit may well have been in plain view. The issues relating to the ultimate factual determination of reasonableness should not have been decided by the district court on a motion for summary judgment. Thus, we reverse and remand in order to allow a jury to assess whether the detention of Pecsi during the entire five to six hour search was reasonable in light of the scope of the warrant. In assessing the reasonableness of the detention, it would be appropriate for the trier of fact to address whether any of the items were concealed, or whether the size of the items listed on the search warrant could reasonably require a five to six hour search of a two-story home and garage.
 
 
 17
 The district court also found that all defendants were entitled to qualified immunity. Police officers are ordinarily entitled to qualified immunity if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The Supreme Court later refined the Harlow test by permitting qualified immunity to be afforded if the officer's conduct was objectively legally reasonable. Anderson v. Creighton, 483 U.S. 635, 639 (1987). Clearly established law requires that "the officers remain on the premises only so long as is reasonably necessary to conduct the search[.]" Tarpley v. Greene, 684 F.2d 1, 9 (D.C.Cir.1982) (quoting 2 W.LaFave, Search and Seizure Sec. 4.10 (1978)). See also Dalia v. United States, 441 U.S. 238, 258 (1979) ("[T]he manner in which a warrant is executed is subject to later judicial review as to its reasonableness."). As discussed above, however, the factual questions which remain unanswered hinder a determination of reasonableness. Under these circumstances, "the jury becomes the final arbiter ... of immunity, since the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury." Brandenburg v. Cureton, 882 F.2d 211, 215-16 (6th Cir.1989). Due to the undeveloped factual record in this case, we cannot conclude that the police officers deserved qualified immunity.[2]
 
 
 18
 We affirm the district court's grant of summary judgment for the City of Eastlake because Pecsi has not come forth with any evidence which would indicate that a policy or custom of the city caused his injuries, as required by Monnell v. Department of Social Services, 436 U.S. 658, 690-91 (1978).
 
 III
 
 19
 The district court's grant of summary judgment in favor of Officer Doyle and the unidentified officers is REVERSED, and the matter is REMANDED for further proceedings consistent with this opinion.
 
 
 
 [1]
 A preliminary issue concerned the applicability of Summers. In stating its holding, Summers referred to "a warrant to search for contraband". 452 U.S. at 705. Pecsi argues that Summers should not be applied because the officers in the instant case were searching for "evidence" rather than "contraband". Pecsi finds support for his position in a footnote in Summers which stated that "[w]e do not decide whether the same result would be justified if the search warrant merely authorized a search for evidence." 452 U.S. at 705 n. 20 (citations omitted). For the purposes of this case, however, we find Summers to be applicable. We leave a definitive resolution of the evidence/contraband distinction for another day
 
 
 [2]
 The district court ended the qualified immunity inquiry after stating that Summers allowed officers to detain an occupant of a house while conducting an authorized search of the house. The issue in this case, however, is not whether the defendants could have detained Pecsi. Rather, the issue is whether the length of the detention was unreasonable under the fourth amendment