Henry LAVADO, Jr., Plaintiff–Appellant,

v.

Patrick W. KEOHANE, et al., Defendants–Appellees.

No. 91–6442.

United States Court of Appeals, Sixth Circuit.

Submitted Nov. 20, 1992.

Decided April 22, 1993.

Henry Lavado, Jr., pro se.

Ed Bryant, U.S. Atty., Tony R. Arvin, Asst. U.S. Atty. (briefed) Memphis, TN, for defendants-appellees.

Before: KEITH and JONES, Circuit Judges; and ALLEN, Senior District Judge.*

NATHANIEL R. JONES, Circuit Judge.

Plaintiff–Appellant Henry Lavado, Jr., a former federal prisoner, appeals from orders denying discovery and appointment of counsel, and from the district court's order granting Defendants–Appellees' motion for judgment on the pleadings or, in the alternative, for summary judgment. For the reasons set forth below, we affirm in part, reverse in part, and remand the case for further proceedings consistent with this opinion.

**I**

Lavado contends that, while incarcerated in a federal prison, some of his incoming mail was unconstitutionally opened outside his presence and read in his presence. His complaint encompasses several separate alleged violations listed below.

**A**

On April 21, 1987, Lavado received a letter from "A. James Connell, Attorney at Law." The envelope was marked "LEGAL MAIL— OPEN IN THE PRESENCE OF INMATE ONLY." Lavado claims that this letter was opened outside his presence by an unidentified mailroom officer.

On May 6, 1987, Lavado received a letter from "William Kuypers, Attorney At Law." The envelope was marked "SPECIAL MAIL." Lavado alleges that this letter was opened outside his presence by an unidentified mailroom officer.

On May 13 and 14, 1987, Lavado received a letter from the United States Department of Justice and a letter from the United States Department of the Treasury. Both envelopes were marked "SPECIAL MAIL." Lavado maintains that these letters were opened outside his presence by an unidentified mailroom officer.

On June 26, 1987, Lavado received a package from "Peter N. Macaluso, Attorney-at-Law." The package was marked "Special Mail—Open only in the presence of the inmate." Lavado asserts that this package was opened outside his presence by Defendant Roger M. Daughtrey.

On June 29, 1987, Lavado received a letter from the Florida Department of Law Enforcement whose envelope was marked "Special Mail—Open only in the presence of the inmate." It was allegedly read in Lavado's presence by Defendant Albert J. Langa.

On July 2, 1987, Lavado received a letter from the Florida Department of Law Enforcement whose envelope was marked "PRISONER HAS REQUESTED THAT THIS BE MARKED 'SPECIAL MAIL.'" This letter was allegedly opened by Defendant Queen E. Thomas outside Lavado's presence.

On October 28, 1987, Lavado received a letter from the United States District Court

---

* The Honorable Charles M. Allen, Senior United States District Judge for the Western District of Kentucky, sitting by designation.

for the District of Columbia. The envelope was marked "OPEN ONLY IN PRESENCE OF INMATE." Lavado maintains that this letter was opened outside his presence by an unidentified mailroom officer.

On November 9, 1987, Lavado received a letter from the United States Court of Appeals for the Eleventh Circuit. The envelope was marked "Special Mail—Open Only in Presence of Inmate." Lavado claims that this letter was opened outside his presence by an unidentified mailroom officer.

Finally, on February 8, 1988, Lavado received a letter from the American Civil Liberties Union of Florida. The envelope was marked "SPECIAL MAIL—OPEN ONLY IN THE PRESENCE OF THE INMATE." No attorney's name was listed on the envelope as sender. Lavado alleges that the letter was opened outside his presence by an unidentified mailroom officer.

## B

·On November 18, 1988, after exhausting his administrative remedies, Lavado filed a complaint in the United States District Court for the Western District of Tennessee against Defendants Patrick W. Keohane, O.I. White, Patrick T. Casey, Thomas, Langa, and Daughtrey—all prison officials—in their individual and official capacities. Lavado's claim was brought under the authority of *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 390–97, 91 S.Ct. 1999, 2001–05, 29 L.Ed.2d 619 (1971). Lavado claimed that opening his mail outside his presence and reading it in his presence violated his First, Fourth, Fifth and Sixth Amendment rights. He sought equitable relief in two forms—a declaration that Defendants' actions were unconstitutional and an injunction ordering Defendants to refrain from opening his mail out of his presence. He also sought compensatory and punitive damages from each Defendant.

Lavado filed a motion for an order compelling discovery on June 9, 1989. On July 13, 1989, Defendants filed a motion to stay discovery, and a motion for judgment on the pleadings or, in the alternative, for summary judgment. Discovery was stayed by order of the district court on July 20, 1989. On Au-

gust 2, 1989, Lavado filed a motion for appointment of counsel. On November 15, 1989, the district court dismissed, on the grounds of qualified immunity, all of Lavado's claims except for his claim for equitable relief against Defendants Keohane, Casey, and White, who were supervisory officials.

At some point thereafter, Lavado was released from prison. He renewed his motion for an order compelling discovery on September 9, 1991, which was referred to a magistrate judge. On September 18, 1991, the remaining prison officials moved the district court to dismiss Lavado's claims for equitable relief as moot because Lavado had been released from federal custody. The magistrate judge issued a Memorandum and Order denying Lavado's motion for an order compelling discovery on September 19, 1991. On September 20, 1991, the district court entered an order denying Lavado's motion for appointment of counsel. The district court granted the prison officials' motion to dismiss on September 26, 1991, and a Judgment in a Civil Case was entered the next day. Lavado timely appealed to this court.

## II

### A

■ "[I]t is well established that the scope of discovery is within the sound discretion of the trial court." *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir.), *cert. denied*, 454 U.S. 893, 102 S.Ct. 388, 70 L.Ed.2d 207 (1981). Accordingly, denials of motions to compel discovery are reviewed only for an abuse of discretion. *See id.; S. Rosenthal & Co. v. Hantscho*, No. 91–3702, 1992 WL 102501 (6th Cir. Apr. 29, 1992).

### B

■ A district court has discretion to appoint counsel for an indigent civil litigant. 28 U.S.C. § 1915(d) (1988) ("The court may request an attorney to represent any such person unable to employ counsel...."); *Reneer v. Sewell*, 975 F.2d 258, 261 (6th Cir.1992) ("The appointment of counsel to civil litigants is a decision left to the sound discretion of the district court, and this decision will be

overturned only when the denial of counsel results in ' "fundamental unfairness impinging on due process rights." ' ") (citations omitted). Accordingly, review of a district court's order denying appointment of counsel is for abuse of discretion. *Henry v. City of Detroit Manpower Dep't,* 763 F.2d 757, 760 (6th Cir.), *cert. denied,* 474 U.S. 1036, 106 S.Ct. 604, 88 L.Ed.2d 582 (1985).

### C

■ The district court granted Defendants' motion for judgment on the pleadings or, in the alternative, for summary judgment. Though the district court did not specify whether it granted judgment on the pleadings or summary judgment, our review of the matter is essentially the same either way. *See Kubicek v. J. Walter Thompson U.S.A., Inc.,* No. 89–1731, 1990 WL 57234 (6th Cir. May 2, 1990); *Murphy v. Gibson,* No. 84–1342, 1985 WL 13285 (6th Cir. May 24, 1985). We review the judgment *de novo* to determine if there is a genuine issue of any material fact, and whether the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.,* 862 F.2d 597, 601 (6th Cir.1988). In making these determinations, we draw all reasonable inferences from the relevant record in favor of the non-movant, *see National Solid Wastes Management Ass'n v. Voinovich,* 959 F.2d 590, 592 (6th Cir.1992), and, "[f]or purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the [non-movant] must be taken as true." *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 479 F.2d 478, 480 (6th Cir.1973). We note that, since Lavado filed a verified complaint, *see* J.A. at 25, his allegations "have the same force and effect as an affidavit" for purposes of responding to a motion for summary judgment. *Williams v. Browman,* 981 F.2d 901, 905 (6th Cir.1992); *see* 28 U.S.C. § 1746 (1988).

### III

### A

■ Lavado's first motion to compel discovery was denied before the issue of quali-

fied immunity was decided by the district court. Given the Supreme Court's directive that "[u]ntil this threshold immunity question is resolved, discovery should not be allowed," *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), the district court's denial of this motion was clearly not an abuse of discretion. *See Criss v. City of Kent,* 867 F.2d 259, 261 (6th Cir. 1988) ("The Supreme Court has clearly stated that discovery in litigation against government officials should be halted until the threshold question of immunity is resolved.").

■ Lavado's renewed motion to compel discovery was denied by a magistrate judge on the basis that Lavado's motion was mooted along with his action for equitable relief when he was released from prison. Lavado claims that such denial was an abuse of discretion because he was unable to argue his case without the discovery he requested. At the time the renewed motion to compel discovery was filed, Lavado had two equitable requests outstanding: (1) a declaration that the prison officials violated the United States Constitution where they allegedly deliberately, continuously, and maliciously opened his privileged special mail outside his presence and read it in his presence; and (2) an injunction ordering the prison officials and their agents to refrain from opening his privileged special mail out of his presence. The request for an injunction was obviously mooted when Lavado was released from prison. Thus, it was not an abuse of discretion to deny Lavado's motion to compel discovery as it relates to the request for an injunction.

■ With regard to the declaratory relief sought, there was no abuse of discretion here either. The magistrate judge (and the district court) correctly concluded that the issue of declaratory relief became moot when Lavado was released from prison. *See Preiser v. Newkirk,* 422 U.S. 395, 402–03, 95 S.Ct. 2330, 2334–35, 45 L.Ed.2d 272 (1975). Therefore, there was no abuse of discretion in denying the renewed motion to compel discovery.

### B

■ "Appointment of counsel in a civil case is not a constitutional right. *Mekdeci v.*

*Merrell National Laboratories,* 711 F.2d 1510, 1522 n. 19 (11th Cir.1983). It is a privilege that is justified only by exceptional circumstances. *Lopez v. Reyes,* 692 F.2d 15, 17 (5th Cir.1982)." *Wahl v. McIver,* 773 F.2d 1169, 1174 (11th Cir.1985). In determining whether "exceptional circumstances" exist, courts have examined "the type of case and the abilities of the plaintiff to represent himself." *Archie v. Christian,* 812 F.2d 250, 253 (5th Cir.1987); *see also Poindexter v. FBI,* 737 F.2d 1173, 1185 (D.C.Cir.1984). This generally involves a determination of the "complexity of the factual and legal issues involved." *Cookish v. Cunningham,* 787 F.2d 1, 3 (1st Cir.1986).

Appointment of counsel pursuant to 28 U.S.C. § 1915(d) is not appropriate when a *pro se* litigant's claims are frivolous, *Henry v. City of Detroit Manpower Department,* 739 F.2d 1109, 1119 (6th Cir.1984), or when the chances of success are extremely slim. *Childs v. Duckworth,* 705 F.2d 915, 922 (7th Cir.1983); *McKeever v. Israel,* 689 F.2d 1315, 1320–21 (7th Cir.1982); *Ma[c]lin v. Freake,* 650 F.2d 885, 887 (7th Cir.1981).

*Mars v. Hanberry,* 752 F.2d 254, 256 (6th Cir.1985).

We find that the district court, which "carefully considered the relevant factors here" and "conclude[d] that exceptional circumstances warranting appointment of counsel do not exist," J.A. at 174 (Order Denying Appointment of Counsel at 2), did not abuse its discretion. *See Reneer,* 975 F.2d at 261 (holding that district court did not abuse its discretion in denying appointment of counsel to indigent prisoner who filed action under 42 U.S.C. § 1983 against prison officials who allegedly opened and read his incoming legal mail).

■■■ Analysis of the district court's November 15, 1989 order granting the prison officials' motion for judgment on the pleadings or, in the alternative, for summary judgment requires a foray into the law of immunity in the context of prisoner mail. The doctrine of immunity arises from the longstanding policy that government officers are entitled to some form of immunity from suits for damages. *Harlow,* 457 U.S. at 806, 102 S.Ct.

at 2731. The doctrine stems from the common law recognition that public officials require this protection to shield them from undue interference with their duties and from potentially disabling threats of liability. *Id.* Of the two types of governmental immunity—absolute and qualified—only the latter is at issue in this case.

■■■ "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] *Harlow,* 457 U.S.[ ] at 819 [, 102 S.Ct. at 2739] ... assessed in light of the legal rules that were 'clearly established' at the time it was taken, *id.* [ ] at 818[, 102 S.Ct. at 2738]." *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). "The contours of the right [the official is alleged to have violated] must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640, 107 S.Ct. at 3039. We have explained that "[t]he relevant inquiry focuses on whether a reasonable official in the defendant's position could have believed his conduct to be lawful, considering the state of the law as it existed when the defendant took his challenged actions." *Poe v. Haydon,* 853 F.2d 418, 423–24 (6th Cir.1988), *cert. denied,* 488 U.S. 1007, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989). We look principally to the decisions of the United States Supreme Court and this circuit to determine whether the law was clearly established at the time of the action in our effort to determine ultimately whether a reasonable official could have considered his or her actions to be lawful. *Id.* at 424; *see also Hall v. Shipley,* 932 F.2d 1147, 1150 (6th Cir.1991). In an extraordinary case, other courts' decisions may be relevant to the inquiry, as we stated in *Ohio Civil Serv. Employees Ass'n v. Seiter,* 858 F.2d 1171, 1177 (6th Cir.1988):

Our review of the Supreme Court's decisions and of our own precedent leads us to conclude that, in the ordinary instance, to find a clearly established constitutional right, a district court must find binding precedent by the Supreme Court, its court of appeals or itself. In an extraordinary

case, it may be possible for the decisions of other courts to clearly establish a principle of law. For the decisions of other courts to provide such "clearly established law," these decisions must both point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting.

In assessing the clarity of the law relevant to the instant case, we begin by noting generally that "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley,* 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). However, a certain limitation or retraction of retained freedoms of prisoners has been upheld in light of the central corrections goal of institutional security. *See Bell v. Wolfish,* 441 U.S. 520, 546–47, 99 S.Ct. 1861, 1877–78, 60 L.Ed.2d 447 (1979); *Meadows v. Hopkins,* 713 F.2d 206, 209–10 (6th Cir.1983). Federal courts should attempt to balance the "policy of judicial restraint regarding prisoner complaints and the need to protect constitutional rights." *Procunier v. Martinez,* 416 U.S. 396, 406, 94 S.Ct. 1800, 1808, 40 L.Ed.2d 224 (1974); *see also Turner,* 482 U.S. at 84, 107 S.Ct. at 2259.

Given this, we have maintained that, though receipt of incoming mail implicates constitutional rights, *see Knop v. Johnson,* 977 F.2d 996, 1012 (6th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1415, 122 L.Ed.2d 786 (1993); *Parrish v. Johnson,* 800 F.2d 600, 603 (6th Cir.1986), prison officials may open prisoners' incoming mail pursuant to a uniform and evenly applied policy with an eye to maintaining prison security. *Parrish,* 800 F.2d at 603. The Bureau of Prisons, Department of Justice, has established policies for opening and reading incoming prisoner mail, *see* 28 C.F.R. §§ 540.2–540.25 (1992).[1] Neither the United States Supreme

---

1. The regulations most relevant to this case read:

§ 540.2  **Definitions.**

(a) *General correspondence* means incoming or outgoing correspondence other than "special mail". "General Correspondence" includes packages sent through the mail.

. . . .

(c) *Special Mail* ... includes correspondence *received from* the following: President and Vice President of the United States, attorneys, Members of the U.S. Congress, Embassies and Consulates, the U.S. Department of Justice (excluding the Bureau of Prisons but including U.S. Attorneys), other Federal law enforcement officers, State Attorneys General, Prosecuting Attorneys, Governors, U.S. Courts (including U.S. Probation Officers), and State Courts. For incoming correspondence to be processed under the special mail procedures (see §§ 540.18–540.19), the sender must be adequately identified on the envelope, and the front of the envelope must be marked "Special Mail—Open only in the presence of the inmate".

. . . .

§ 540.14  **General correspondence.**

(a) Institution staff shall open and inspect all incoming general correspondence. Incoming general correspondence may be read as frequently as deemed necessary to maintain security or monitor a particular problem confronting an inmate.

. . . .

. . . .

§ 540.18  **Special mail.**

(a) The Warden shall open incoming special mail only in the presence of the inmate for inspection for physical contraband and the qualification of any enclosures as special mail. The correspondence may not be read or copied if the sender is adequately identified on the envelope, and the front of the envelope is marked "Special Mail—Open only in the presence of the inmate".

(b) In the absence of either adequate identification or the "special mail" marking indicated in paragraph (a) of this section appearing on the envelope, staff may treat the mail as general correspondence and may open, inspect, and read the mail.

. . . .

§ 540.19  **Legal correspondence.**

(a) Staff shall mark each envelope of incoming legal mail (mail from courts or attorneys) to show the date and time of receipt, the date and time the letter is delivered to an inmate and opened in the inmate's presence, and the name of the staff member who delivered the letter. The inmate may be asked to sign as receiving the incoming legal mail. This paragraph applies only if the sender has marked the envelope as specified in § 540.18.

(b) The inmate is responsible for advising any attorney that correspondence will be handled as special mail only if the envelope is marked with the attorney's name and an indication that the person is an attorney, and the front of the envelope is marked "Special Mail—Open only in the presence of the inmate". Legal mail shall be opened in accor-

Court nor this circuit has held these regulations to be unconstitutional. Indeed, prior to the time of the alleged violations in the instant case, the Supreme Court had approved a prison policy which allowed the opening of legal mail in the presence of the prisoner. *Wolff v. McDonnell,* 418 U.S. 539, 577, 94 S.Ct. 2963, 2985, 41 L.Ed.2d 935 (1974). The Court also found it to be "entirely appropriate that the State require any [communications from an attorney] to be specially marked as originating from an attorney, with his name and address being given, if they are to receive special treatment." *Id.* at 576, 94 S.Ct. at 2985.[2] At the time of the alleged violations, we are aware of no published opinion to have held that strict application of the Bureau of Prisons regulations violates inmates' constitutional rights. Indeed, the Seventh Circuit, during the time period of the alleged violations in the instant case, indicated that strict application of the regulations does *not* violate inmates' constitutional rights. *Martin v. Brewer,* 830 F.2d 76, 78 (7th Cir.1987); *see also Burt v. Carlson,* 752 F.Supp. 346, 349 (C.D.Cal.1990) (finding no reported cases holding that strict application of the Bureau of Prisons regulations violates prisoners' constitutional rights). We find no other preexisting United States Supreme Court or Sixth Circuit case that would make it clearly apparent that strictly following the regulations would violate Lavado's constitutional rights. *See Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039 ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in ques-

tion has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.") (citation omitted). Nor do we find that the decisions of other circuits "both point unmistakably to the unconstitutionality of the conduct complained of and [are] so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting." *Seiter,* 858 F.2d at 1177. Consequently, we agree with the district court that a reasonable prison official could have considered opening of the April 21, May 6, May 13, May 14, July 2, and October 28, 1987 letters outside Lavado's presence to have been lawful, considering the state of the law as it existed at the time of the challenged actions, since the letters did not strictly comply with the Bureau of Prisons regulations requiring the marking, "Special Mail—Open only in the presence of the inmate." *See* 28 C.F.R. §§ 540.2(c), 540.18(a), 540.19(b); *see also Burt,* 752 F.Supp. at 349 ("If the law at [the time of the incident] was not clearly established that the officials had no right to open special mail adequately identified as such despite deviation from the formula mark specified in Section 540.18(a), an official could not reasonably be expected to anticipate subsequent legal developments, nor could he be fairly said to 'know' that the law forbade such conduct. There are no reported cases that resolve this issue, and the position of the [defendants] ... is not so obviously contrary to the law as set forth in *Wolff* and later cases as to necessarily have been recognized as such.") (citations omitted).[3]

---

dance with special mail procedures (see § 540.18).

. . . .

28 C.F.R. §§ 540.2, 540.14, 540.18, 540.19 (1992). The wording of these regulations in 1987 was the same as quoted above.

**2.** As well, this court had suggested in an unpublished opinion that the special labeling requirements for legal mail as described in the Bureau of Prisons regulations are constitutional. *Phipps v. Keohane,* No. 86–5611, 1986 WL 18567 (6th Cir. Dec. 10, 1986).

**3.** We note also that it is apparent from the record that Lavado was informed on many occasions during the time period of the alleged violations

that, if he wanted incoming legal or "special" mail read in his presence, he had to inform the sender that the marking, "Special mail—Open only in the presence of the inmate," was required—verbatim. *See* J.A. at 64 ("Incoming mail from certain authorized persons is entitled to be treated as 'Special Mail' if the sending authority is adequately identified on the envelope and the front of the envelope is marked "Special Mail—Open in the Presence of the Inmate" ".); *id.* at 109 ("It is the inmate's responsibility to notify attorneys, and all other correspondents covered under the special mail spectrum, of the notice to be placed on the envelope. It is our intention to process the large quantities of mail received everyday as efficiently as possible. For

We similarly dispose of the February 8, 1988 letter from the American Civil Liberties Union. Although the letter had the "Special Mail—Open only in the presence of the inmate" marking pursuant to the Bureau of Prisons regulations, the envelope did not contain an attorney's name nor did it adequately identify that the letter was sent by an attorney as required by the regulations. *See* 28 C.F.R. § 540.19(b). Thus again, a reasonable prison official could have considered opening this letter outside Lavado's presence to have been lawful, given the state of the law as it existed at the time of the incident. *See Wolff,* 418 U.S. at 576, 94 S.Ct. at 2985 ("We think it entirely appropriate that the State require any [communications from an attorney] to be specially marked as originating from an attorney, with his name and address being given, if they are to receive special treatment.").

We also find that opening the June 26, 1987 package did not violate constitutional rights that were clearly established at the time of the opening. The outside of the package contained the marking, "Special Mail—Open only in the presence of the inmate," identified the sender, and identified the sender as an attorney as required by 28 C.F.R. § 540.19(b). The Bureau of Prisons regulations, however, do not clearly indicate that *packages* so marked are to be treated the same as *envelopes* so marked. *See* 28 C.F.R. § 540.19(a) (using the term "envelope"); 28 C.F.R. § 540.19(b) (same); *compare* 28 C.F.R. § 540.2(a) (including packages within the definition of "General Correspondence") *with* 28 C.F.R. § 540.2(c) (not specifically including packages within the definition of "Special Mail"). Moreover, packages may well present more of a security risk than envelopes. *Cf. Bell,* 441 U.S. at 553–55, 99 S.Ct. at 1881–82. Thus, at the time of the violation, the contours of Lava-

do's alleged constitutional right to have properly marked packages opened in his presence were not sufficiently clear that a reasonable official would understand that opening his properly marked package outside his presence violated that right.

■ We view the prison officials' conduct relating to the June 29 and November 9, 1987 letters differently, however. Albert J. Langa allegedly opened and read in Lavado's presence the June 29, 1987 letter from the Florida Department of Law Enforcement which was marked "Special Mail—Open only in the presence of the inmate." Lavado alleged in his complaint that Mr. Langa, "after reading plaintiff's privileged mail, ... gave plaintiff his business card stating that plaintiff would need it to 'spell [defendant's] name right when [plaintiff] sue[d].'" J.A. at 17. The prison officials argue that they are entitled to qualified immunity on this score because "[n]either the Supreme Court nor the Sixth Circuit ... has addressed the question of whether a prisoner has a constitutional right *not* to have his legal related mail opened and read in his presence." Appellees' Br. at 9 (emphasis in original). Lavado also alleges that an unknown prison official opened the appropriately marked November 9, 1987 letter from the United States Court of Appeals for the Eleventh Circuit out of his presence. The prison officials again respond that they are entitled to qualified immunity because "[t]here is ... no clearly established law holding that a prisoner has a constitutional right to have his legal related mail opened only in his presence." *Id.*

Though the United States Supreme Court and this circuit may not have clearly established that opening properly marked legal or "special" mail outside inmates' presence or reading it in inmates' presence violates constitutional rights in and of itself,[4] we have

---

this reason, it is imperative that the special mail marking regulations be precise.").

**4.** In *Wolff v. McDonnell,* 418 U.S. 539, 574–77, 94 S.Ct. 2963, 2983–85, 41 L.Ed.2d 935 (1974), the United States Supreme Court noted that whether First, Sixth and Fourteenth Amendment rights of prisoners are infringed by opening letters determined or found to be from attorneys *in the presence of* prisoners is "far from clear." Though Lavado seems to read *Wolff* as standing

for the proposition that prison officials may not open privileged special mail outside an inmate's presence, *see* Lavado's Br. at 10–11, "[t]he narrow issue ... presented [in *Wolff*] is whether the letters determined or found to be from attorneys may be opened by prison authorities in the presence of the inmate or whether such mail must be delivered unopened if normal detection techniques fail to indicate contraband." *Wolff,* 418 U.S. at 575, 94 S.Ct. at 2984. The Court wrote,

held that opening/reading inmates' mail in "arbitrary" or "capricious" fashion does violate inmates' First Amendment rights. *Parrish,* 800 F.2d at 604; *see also Reneer,* 975 F.2d at 259–60 (applying holding of *Parrish* to partially reverse district court's order granting summary judgment for defendants where prison officer read privileged legal mail in inmate's presence; "if the mail was actually read, and this action was motivated by retaliation as plaintiff alleges, such behavior by prison officials might constitute the type of arbitrary action proscribed in *Parrish,* 800 F.2d at 604"); *cf. Al–Jabbar a'La v. Dutton,* No. 92–5004, 1992 WL 107016 (6th Cir. May 19, 1992) (unpublished order) ("Al–Jabbar did not demonstrate that, by opening his mail outside his presence, the defendants were motivated by personal prejudice towards him, that they intended to interfere with his right of access to the courts, or that they otherwise acted in a capricious manner. *See Parrish v. Johnson,* 800 F.2d 600, 604 (6th Cir.1986)."); *Jackson v. Norris,* No. 90–6307, 1991 WL 42244 (6th Cir. Mar. 28, 1991) (unpublished order) ("The court noted that [the prisoner] failed to allege any facts which would suggest that [the prison official] was motivated by a 'personal prejudice' towards

[the prisoner], that [the prison official] intended to interfere with [the prisoner's] access to the courts, or otherwise acted in a 'capricious manner.' *See Parrish v. Johnson,* 800 F.2d 600, 604 (6th Cir.1986).... Upon review, we find no error."). *Parrish* was handed down well before the alleged openings/reading took place. Thus, it was clearly established at the time of the openings/reading in the instant case that prisoners' mail could not be opened or read in arbitrary or capricious fashion.

While we do not contend here that violations of the Bureau of Prisons regulations, *per se,* are violations of the aforementioned clearly established constitutional rights,[5] we believe that the allegations of blatant disregard for established regulations give rise to an inference of arbitrary or capricious action. We also note that the allegation that Mr. Langa read Lavado's properly marked correspondence and proceeded to give Lavado his business card so Lavado would be able to spell his name correctly when Lavado sued also serves as a basis for such an inference. As discussed *supra,* judgment on the pleadings or summary judgment is not appropriate where, drawing all reasonable inferences from the relevant record in favor of the non-

---

"We need not decide, however, which, if any, of the asserted [constitutional] rights are operative here, for the question is whether, assuming some constitutional right is implicated, it is infringed by the procedure now found applicable by the State." *Id.* at 576, 94 S.Ct. at 2984. It concluded that defendants, "by acceding to a rule whereby the inmate is present when mail from attorneys is inspected, have done all, and perhaps more, than the Constitution requires." *Id.* at 577, 94 S.Ct. at 2985.

In *Parrish v. Johnson,* 800 F.2d 600, 604 (6th Cir.1986), we noted that "several courts have held that mail relating to a prisoner's legal matters may not be read and may only be opened in the prisoner's presence." We did not, however, specifically join these courts in so holding. Among the "several courts" we noted were: *Taylor v. Sterrett,* 532 F.2d 462, 477 (5th Cir.1976); *Bach v. Illinois,* 504 F.2d 1100, 1102 (7th Cir.) (per curiam), *cert. denied,* 418 U.S. 910, 94 S.Ct. 3202, 41 L.Ed.2d 1156 (1974); *Smith v. Robbins,* 454 F.2d 696 (1st Cir.1972). *Parrish,* 800 F.2d at 604. We noted *Sostre v. McGinnis,* 442 F.2d 178, 201 (2d Cir.1971) (en banc), *cert. denied,* 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972) to the contrary, but indicated that the Second Circuit in *Heimerle v. Attorney General,* 753 F.2d 10, 12–13 (2d Cir.1985) suggested that

*Sostre* may no longer be good law in light of intervening judicial decisions. *Parrish,* 800 F.2d at 604 & n. 3.

**5.** The Supreme Court has made it clear that the failure to comply with state or federal regulations does not necessarily deprive government officials of qualified immunity. *Davis v. Scherer,* 468 U.S. 183, 194, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision."). "Neither federal nor state officials lose their immunity by violating the clear command of a statute or regulation—of federal or of state law—unless that statute or regulation provides the basis for the cause of action sued upon." *Id.* at 195 n. 12, 104 S.Ct. at 3019 n. 12; *see also Maraziti v. First Interstate Bank of California,* 953 F.2d 520, 525 (9th Cir.1992); *Young v. Kann,* 926 F.2d 1396, 1404–05 n. 15 (3d Cir.1991); *Martin v. Marriner,* 904 F.2d 120, 122 (1st Cir.1990), *cert. denied,* 498 U.S. 1034, 111 S.Ct. 696, 112 L.Ed.2d 686 (1991); *Walentas v. Lipper,* 862 F.2d 414, 423 (2d Cir.1988), *cert. denied,* 490 U.S. 1021, 109 S.Ct. 1747, 104 L.Ed.2d 183 (1989); *Childress v. SBA,* 825 F.2d 1550, 1553 (11th Cir.1987); *Culbreath v. Block,* 799 F.2d 1248, 1250–51 (8th Cir.1986).

movant, there is a genuine issue of any material fact. Given the inferences to be drawn in Lavado's favor, there is, in the relevant record, a genuine issue of material fact as to whether the June 29 and November 9, 1987 incidents were arbitrary or capricious. *Cf. Willetts v. Ford Motor Co.*, 583 F.2d 852, 854 (6th Cir.1978); *Day v. United Auto., Aerospace & Agric. Implement Workers of Am.*, 466 F.2d 83, 98–99 (6th Cir.1972). We have not hesitated to reverse dismissals (or affirm denials of motions for dismissal) of actions before trial where we have found a genuine issue of material fact relating to qualified immunity in the record. *See, e.g., Jackson v. Hoylman*, 933 F.2d 401, 403 (6th Cir.1991) (affirming district court's denial before trial of defendants' claim of qualified immunity on the grounds that a genuine issue of material fact existed in the record); *Hall*, 932 F.2d at 1154 ("The district court correctly found that summary judgment is inappropriate on this issue because there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the officers did acts which violate clearly established rights."); *Pecsi v. Doyle*, No. 90–4039, 1991 WL 137597, at *3, 1991 U.S.App. LEXIS 17828, at *10 (6th Cir. July 26, 1991) (district court's finding of qualified immunity inappropriate before trial where genuine issues of material fact relating to the issue of qualified immunity remain; "Under these circumstances, 'the jury becomes the final arbiter ... of immunity, since the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury.' ") (quoting *Brandenburg v. Cureton*, 882 F.2d 211, 215–16 (6th Cir.1989)), *cert. denied,* —— U.S. ——, 112 S.Ct. 1175, 117 L.Ed.2d 420 (1992); *see also Yates v. City of Cleveland*, 941 F.2d 444, 447 (6th Cir.1991); *see generally Poe*, 853 F.2d at 426 ("[S]ummary judgment would not be appropriate if there is a factual dispute (*i.e.,* a genuine issue of material fact) involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights."). We thus reverse the district court's November 15, 1989 order as it relates to the June 29 and November 9, 1987 letters.

Affirmed in part, reversed in part, and remanded for further proceedings in accordance with this opinion.