53 F.3d 331
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Bruce C. GREENING, Plaintiff-Appellant,
v.
LITTON INDUSTRIAL AUTOMATION SYSTEMS, INC., Defendant-Appellee.
 No. 93-2351.
 United States Court of Appeals, Sixth Circuit.
 March 6, 1995.
 
 Before: LIVELY, JONES, and SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff, Bruce C. Greening, appeals the decision of the district court granting summary judgment in favor of the defendant, Litton Industrial Automation Systems, Inc. Greening contends that the district court erred when it granted summary judgment in favor of Litton as there were several genuine issues of material fact to be resolved by a jury. For the reasons stated herein, we affirm the decision of the district court.
 
 I.
 
 2
 This is a fraud action arising under the diversity jurisdiction of the court from the alleged failure of Greening's employer, Lamb Technicon Corporation, to advise Greening of merger negotiations with Litton at the time Greening voluntarily terminated his employment in September 1986. At the time of Greening's resignation and in accord with a Stock Redemption Agreement executed by Greening and Lamb in May 1982, Lamb repurchased Greening's stock at the then-established book value of $15.01 per share. The following year, in April 1987, Litton purchased Lamb's stock under a merger agreement at a price of $33.07 per share.
 
 
 3
 Greening filed his suit in September 1992, alleging that the directors and officers of Lamb "actively concealed" this "impending merger" between Lamb and Litton, resulting in damages of the difference between the amount Greening actually received at the time of his resignation and the amount later paid by Litton in April 1987.
 
 
 4
 Litton, as Lamb's successor in interest, moved for summary judgment on the ground that there existed no genuine issue of material fact relative to the existence of any merger negotiations between Lamb and Litton at the time Greening terminated his employment in September 1986. The district court granted summary judgment to Litton, finding there was no genuine issue of material fact to support Greening's allegations of common law fraud of failing to disclose the alleged merger negotiations at the time Greening terminated his employment with Lamb.
 
 II.
 
 5
 Review of a district court's grant of summary judgment is de novo. Lavado v. Keohane, 992 F.2d 601, 605 (6th Cir.1993). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). In responding to a summary judgment motion, the non-moving party must set "forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).
 
 
 6
 This case is premised on Michigan common law fraud where "[t]he elements constituting actionable fraud or misrepresentation are well-settled." Hi-Way Motor Co. v. International Harvester Co., 247 N.W.2d 813, 815 (Mich.1976). The Michigan Supreme Court stated:
 
 
 7
 The general rule is that to constitute an actionable fraud it must appear: (1) that defendant made a material misrepresentation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist.
 
 
 8
 Candler v. Heigho, 175 N.W. 141, 143 (1919). Nondisclosure may constitute a form of fraud where there exists a duty on the part of the defendant to reveal such facts. In re: Benker Estate, 296 N.W.2d 167, 169 (Mich.Ct.App.1980). Further, the elements of Michigan common law fraud have been held to be substantially the same as those under a Securities and Exchange Commission Rule 10b-5 violation. Nat'l Bank of Detroit v. Whitehead & Kales Co., 528 F.Supp. 940, 948 (E.D.Mich.1981).
 
 
 9
 Section 10(b) and Rule 10(b)(5) make it unlawful to misrepresent or fail to disclose material information in connection with the purchase or sale of securities. Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 150-54 (1972). For purposes of the statute and rule, a misstatement or omission is deemed "material" if there is a "substantial likelihood that, under all the circumstances, the omitted [or misstated] fact would have assumed actual significance in the deliberations of the reasonable shareholder." TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976).
 
 
 10
 "The materiality of the information misstated or withheld is determined in light of what the defendants knew at the time the plaintiff committed himself to sell the stock." Michaels v. Michaels, 767 F.2d 1185, 1195 (7th Cir.1985). Further, activities which occurred after the sale of the stock are relevant only to the extent that they reflect what the defendant knew at the time. Id. The law mandates only the disclosure of existing facts, not that an insider volunteer an economic forecast or disclose his educated guesses or predictions based upon superior financial or other expert analysis. Arber v. Essex Wire Corp., 490 F.2d 414, 421 (6th Cir.1974).
 
 
 11
 Additionally, to prevail on a Section 10(b) claim, a plaintiff must prove scienter, specifically, an intent to deceive. Michaels, 767 F.2d at 1198 (citing Ernst & Ernst v. Hochfelder, 425 U.S. 185, 212-14 (1976)). Finally, the plaintiff must prove reliance, specifically that he was induced to act by the omission or misrepresentation. Although reliance may be presumed if the information is material, Affiliated Ute Citizens of Utah, 406 U.S. at 153-54, this presumption is rebuttable upon a showing that plaintiff's decision would have been no different had the material fact been disclosed. Rochez Bros., Inc. v. Rhoades, 491 F.2d 402, 410 (3d Cir.1974), cert. denied, 425 U.S. 1993 (1976).
 
 
 12
 Undisputedly, between April and August of 1986, Lamb and Litton embarked on preliminary discussions and discovery relative to a deal. They executed agreements for the exchange of confidential information. However, the evidence was that any conceivable thoughts or hopes Lamb may have had of any deal with Litton were extinguished after the failure of the August 7, 1986, meeting. The unrefuted testimony was that both representatives of Lamb and Litton believed that the negotiations were over after the August 7 meeting with no hope of resuming them. Additionally, there were no board resolutions indicating any type of possible deal in September 1986 when Greening committed himself to sell his stock by termination of his employment. Nor had either Litton's or Lamb's board of directors been advised of the preliminary merger negotiations at this time.
 
 
 13
 As Lamb was a closely-held corporation, it had a duty to disclose to Greening, as both an investor and employee, material ongoing negotiations for a merger with Litton, even though the price and structure of the deal had not been resolved. See Jordan v. Duff and Phelps, Inc., 815 F.2d 429, 431 (7th Cir.1987). We agree with the district court's conclusion that the merger negotiations between Litton and Lamb had halted in August 1986, and had not resumed when Greening terminated his employment with Lamb in September 1986. Therefore, as the law mandates only the disclosure of existing facts, not that an insider volunteer an economic forecast or disclose his educated guesses or predictions based upon superior financial or other expert analysis, Arber v. Essex Wire Corp., 490 F.2d 414, 421 (5th Cir.1974), the defendants did not violate any duty to disclose the alleged merger negotiations to Greening at the time he terminated his employment with Lamb and the district court's grant of summary judgment for the defendant was proper.
 
 
 14
 However, the district court erred when it held that there was no material issue as to whether the negotiations between Lamb and Litton would have been a factor in Greening's decision to terminate his employment. The Seventh Circuit held that in the case of an employee-shareholder, "[t]he departure of such an employee is an investment decision as much as it is an employment decision." Jordan, 815 F.2d at 437.
 
 
 15
 There was testimony that Greening was aware that his job duties at Lamb had become superfluous because of changes in Lamb's business activities. Additionally, there was evidence that Greening was aware that his chances of promotion were marginal. However, there was also evidence from Greening that he would have considered the potential value a merger would have on his stock in reaching his decision to resign. If there had been a duty to disclose the negotiations, then there would have been a genuine issue of a material fact on this issue as credibility determinations are a jury function and a reasonable person could have returned a judgment for Greening based on evidence in the record. Anderson at 248; Martin v. Ohio Turnpike Comm'n, 968 F.2d 606, 609 (6th Cir.1992), cert. denied, 113 S.Ct. 979 (1993). However, as there was no duty to disclose the negotiations during the relevant time frame, the district court did not err in granting summary judgment for of the defendant.
 
 
 16
 AFFIRMED.